# CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

· AT THE

### APRIL TERM, 1908.

---

## THE STATE ex rel. SCOTT v. DIRCKX, County Clerk.

### In Banc, April 29, 1908.

1. **SHERIFF: Eligibility.** A person who was elected sheriff in 1906 and is the present incumbent of the office, is eligible to be elected at the general election in 1908 and to hold the office for a term of four years from January 1st after such election.

2. ———: ———: **Constitutional Amendment of 1906.** The fact that the constitutional amendment adopted in 1906 fixed the sheriff's term at four years and said he "shall be eligible only four years in any one period" does not make ineligible a person who was elected sheriff at the same general election at which said amendment was adopted and went into office in the following January thereafter and is now the incumbent of said office, although, if elected in 1908, he will be entitled to hold the office for four years more. By the very terms of the amendment (which repealed the old section which limited the sheriff's tenure to two years), it is not to have actual operation and practical effect until the election in 1908.

   *Held,* by LAMM,. J., dissenting, that it makes no difference whether the term relator served was under the old constitutional provision or under the new, so long as it was under the one or the other, and so long as the two terms taken together make a continuous service contrary to either. In no case can relator have a continuous service as sheriff longer than four years.

211 Sup. (568)

3. ———: ———: ———: **Retrospective.** A settled rule of construction, applicable to constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only. The constitutional amendment of 1906, in saying, "There shall be elected by the qualified voters in each county on the first Tuesday after the first Monday in November, A. D. 1908, and thereafter every four years, a sheriff and coroner," by express terms is given a prospective operation, and does not apply to sheriffs elected in 1906.

4. ———: ———: ———: **Future Sheriffs.** The constitutional amendment of 1906 by its own terms confines the eligibility of a sheriff to those sheriffs to be elected in 1908 and those to be elected every four years thereafter.

5. ———: ———: ———: **Public Policy.** Various changes have been made in the fundamental law on the subject of the eligibility of sheriffs, by changes in the constitutions, and public policy on the subject is to be ascertained from the Constitution as it is now, and not from what was provided in previous constitutions.

*Held*, by **LAMM, J.,** in a dissenting opinion, that the evil struck at by the amendment of 1906, was to put a stop to sheriffs being candidates for reelection while they were exercising the extraordinary responsibilities of the office, and that intent is thwarted by permitting a sheriff already in office to be eligible for a longer term than he could have obtained under the former constitutional provision.

6. ———: ———: ———: ———: **Shortening Eligibility of Incumbents.** While considering the public policy of the State in reference to the eligibility of a person now a sheriff to hold his office, after a reelection in 1908, for four years more, under the amendment of 1906, it is proper to consider also that under the Constitution prior to the amendment he could be elected to two terms of two years each in succession, and if he is not, under the amendment, eligible to reelection, sheriffs in many cases will be barred from holding more than one term of two years; and, as bearing on the question of public policy, it is also proper to consider that the amendment provides that sheriffs hereafter elected cannot succeed themselves.

*Held*, by **LAMM, J.,** that eligibility to office is not an inherent right of citizenship, and it could not have been the intendment of the amendment to give incumbents in the sheriff's office an advantage over sheriffs preceding or succeeding them.

7. ———: ———: ———: **Exception by Construction.** Where no exceptions are made in terms, in a constitutional provision or

statute, none will be made by mere implication or construction. The constitutional amendment adopted in 1906 does not say that sheriffs elected in 1906 and in office at the November election in 1908 are ineligible to be elected in 1908 for a term of four years beginning in January, 1909, and the courts will not read any such exception into it.

8. ——: ——: **Refusal to File Declaration: Mandamus.** Where the county clerk refuses to file the declaration of a candidate for the party nomination for a county office, the candidate has no other remedy to get his name on the party ticket except to bring mandamus to compel the officer to file and accept his declaration.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Silver & Brown* for relator.

The amendment of 1906 provides that there shall be elected by the qualified voters in each county on the first Tuesday next following the first Monday in November, A. D. 1908, and thereafter every four years, a sheriff and coroner. They (those elected in 1908) shall serve for four years and until their successors be duly elected and qualified, unless sooner removed for malfeasance in office. Before entering on the duties of their offices, they (that is, those elected in 1908, and their successors in office) shall give security in the amount and in such manner as shall be prescribed by law, and they (the ones elected in 1908), and their successors shall be eligible only four years in any one period. The very language of the amendment shows that the persons to be elected in 1908 and their successors, and none other, were in the minds of the framers of the constitutional amendment. The amendment is wholly and exclusively prospective in its character, and cannot be construed in any other way. For the foregoing and other reasons it is an error to say that the petitioner is holding his present term under the amendment of 1906, because that amendment was

adopted before petitioner qualified on January 1, 1907; although the amendment was so adopted, it has had only potential, not an actual operation and effect. Obviously the petitioner is now holding under the old provision and old law under which he was elected; otherwise, he is merely an officer *de facto*. R. S. 1899, sec. 6982; State v. Kyle, 166 Mo., 287; Real v. State, 42 N. Y. 276. A law may be passed to take effect on the happening of a future event or contingency. State, etc., v. Wilcox, 45 Mo. 464; State, etc., v. Pond, 93 Mo. 625.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1.) "The established rules of construction applicable to statutes, are also applied to the construction of constitutions." 8 Cyc., 729; 6 Am. and Eng. Ency. Law, 921. (2) The amendment of a statute or constitution, by including a provision which had also been a part of the statute amended, or constitutional provision stricken out, is construed as remaining in force without a break in its continuity. Lewis' Sutherland on Stat. Const. sec. 237; Cooley's Const. Lim., 96-7. (3) Eligibility to office is not a natural right inherent in a citizen, and it is not a grant or vested right, nor a property right. "A public elective office is a public agency which, barring constitutional inhibition, express or implied, may be abolished, curtailed or regulated by legislative enactment." State ex rel. v. Sheppard, 192 Mo. 509; State ex rel. v. Evans, 166 Mo. 347; State ex rel. v. Rackliffe, 164 Mo. 453; 6 Am. and Eng. Ency. Law, 328; Throop on Public Officers, sec. 19; Mechem's Public Offices and Officers, sec. 64. (4) "If a statute or constitutional provision fixing or limiting the operation of an official term is ambiguous, that interpretation should be followed which limits the term to the shortest time." 23 Am. and Eng. Ency. Law, 409; Judicial

Term of Office, 114 N. C. 123; Wright v. Adams, 45 Tex. 134; Throop on Public Officers, sec. 308. And the same policy and reason are applicable in the case of ambiguity as to eligibility. (5) While it is not controverted that constitutions like statutes are construed as prospective in their operation, a contrary intent not appearing, it is also the law that a constitutional amendment takes effect from the time of its adoption. State v. Kyle, 166 Mo. 287; 6 Am. and Eng. Ency. Law, 909. The fact that by the amendment of 1906 the election at which the four-year term is to begin is that of 1908, does not militate against the contention that the said amendment has been in force ever since its adoption two years ago, and that all of the other provisions of said amendment, as to qualification, giving security, etc., have been in force and have applied to all appointments and elections to fill vacancies since that time, and the sheriffs elected in 1906, since said amendment has been in force, have, therefore, been holding their offices during that period under the said amendment. (6) The words ''any period'' and ''any one period,'' as used in the several constitutions of this State prescribing the conditions of eligibility or ineligibility for the office of sheriff, evidently referred to a continuous period of the time designated. 6 Words and Phrases Judicially Defined, 5302. (7) Persons appointed or elected to fill a vacancy in the office of sheriff since the adoption of the amendment in 1906 would be ineligible as candidates to succeed themselves but for the saving clause in section 11 of said article. Such sheriffs have held office during such unexpired term under said constitutional amendment, and not under the old provision which was stricken out before they entered upon the duties of their office. Yet, it is manifest that those who were elected in 1906 and are now in office, have been no less holding under the same constitutional provision during the same period as those appointed by the Gov-

ernor or elected at a special election. (8) The amendment of 1906 prescribes a condition of ineligibility to the office of sheriff, viz: that he shall be eligible only four years in any one period.

GANTT, C. J.—This is a proceeding by the relator to obtain a peremptory writ of mandamus requiring the respondent as county clerk of Cole county to file the declaration of the relator as a candidate for the office of sheriff of said county in compliance with section 5 of an act of the 44th General Assembly entitled, "An Act to provide for party nominations by direct vote," approved March 18, 1907, Laws of Missouri, 1907, page 263. An alternative writ of mandamus was awarded and service thereof waived and the county clerk filed his return thereto. The petition in substance states that the relator is a taxpayer, voter and citizen of Cole county, Missouri, and has been for four years past; that at the general election held on the first Tuesday after the first Monday of November, 1906, he was duly elected to the office of sheriff of Cole county for the full term of two years and until his successor should be elected and qualified; that thereafter he received a certificate to said office and duly qualified as the law required and has since discharged the duties of the said office. That prior to his election and entering upon the discharge of his duties as such sheriff on January the first, 1907, he had not held said office nor been an incumbent thereof; that at the time of the election at which relator was elected sheriff of said county the following provision of the Constitution of 1875 of this State, to-wit, section 10 of article 9 thereof, was in force:

"Section 10. There shall be elected by the qualified voters of each county, at the time and places of electing representatives, a sheriff and coroner. They shall serve for two years, and until their successors

be duly elected and qualified, unless sooner removed for malfeasance in office, and shall be eligible only four years in any period of six. Before entering on the duties of their office, they shall give security in the amount and in such manner as shall be prescribed by law. Whenever a county shall be hereafter established, the Governor shall appoint a sheriff and a coroner therein, who shall continue in office until the next succeeding general election and until their successors shall be duly elected and qualified.''

Relator then alleges that at the said general election held in November, 1906, the following amendment to the Constitution relating to the office of sheriff was adopted by the voters of this State:

''Amend by striking out all of section 10 of article 9 of the Constitution of the State of Missouri and adopt in lieu thereof a new section to be known as section 10, article 9, of the said Constitution and to be in words and figures as follows:

''Section 10. There shall be elected by the qualified voters in each county on the first Tuesday following the first Monday in November, A. D. 1908, and thereafter every four years, a sheriff and coroner. They shall serve for four years and until their successors be duly elected and qualified, unless sooner removed for malfeasance in office. Before entering on the duties of their office they shall give security in the amount and in such manner as shall be prescribed by law and shall be eligible only four years in any one period. Whenever a county shall be hereafter established, the Governor shall appoint the sheriff and coroner therein, who shall continue in office until the next succeeding general election and until their successors shall be duly elected and qualified.''

That by section 5 of the Act of March 18, 1907, candidates at said primary election for nomination for county offices shall at least sixty days before the date

of said primary election file in the office of the county
clerk of their respective counties a declaration of their
condidacy in which each candidate for nomination for
a county office shall state "his full name and residence,
the office for which he proposes as a candidate and the
party upon whose ticket he is to be a candidate."
That said act provides that said declaration so made
shall be accepted and filed by the proper official, that is,
by the county clerk, in lieu of all other nomination
papers required by said act. That relator desiring and
intending to become a candidate at the primary elec-
tion to be held on the first Tuesday in August, 1908,
for the office of sheriff of Cole county, did on March
12, 1908, present to the respondent, the county clerk
of Cole county, his declaration in writing of his can-
didacy at said primary election for the office of sheriff
of Cole county, and did request the respondent to ac-
cept the same and file it in his office; that respondent
refused to accept said declaration of relator's candi-
dacy for said office of sheriff and did refuse to file the
same, assigning as a reason for his said action that
relator having been elected sheriff of Cole county at
the general election held in this State in 1906, and be-
ing the present incumbent of said office, is not eligible
to said office or competent to hold the same for the term
of four years prescribed by the amendment to the Con-
stitution relating to the office of sheriff and adopted
at the general election in 1906 and hereinbefore fully set
out. That the refusal of respondent to accept said
declaration of relator's candidacy and to file the same
in his said office of county clerk is wrongful and in con-
travention of relator's rights in the premises and of the
duty of respondent as county clerk under the provis-
ions of the said act of the General Assembly of this
State entitled, "An Act to provide for party nomina-
tions by direct vote," approved March 18, 1907. Where-
fore, he prays for writ of mandamus requiring respond-

ent to accept and file relator's declaration of his said candidacy for sheriff as aforesaid.

In his return the respondent demurs to the petition of relator and assigns two grounds of demurrer, to-wit: First. Said petition and alternative writ fail to state facts sufficient to constitute a cause of action. Second. Said petition and alternative writ and the matters and things therein stated and set forth are not sufficient in law and equity to entitle relator to the relief asked for in said petition or to authorize the issuing of said writ of mandamus.

The demurrer admits all the questions of fact in regard to the respective qualifications of the relator and respondent and the regularity of the declaration of the relator's candidacy, so that the sole question for our consideration at this time is whether the relator, having been elected sheriff of Cole county at the general election held in this State in November, 1906, and being the present incumbent of that office, is precluded, by the terms of the Constitutional amendment of 1906, in relation to the office of sheriff and known as section 10 of article 9 of the Constitution of this State, from holding the office as his own successor for the term of four years provided by said amendment, to be filled at the general election to be held in this State in November, 1908.

If relator will be eligible to the office of sheriff to be filled at the next general election to be held in November, 1908, he is entitled to a peremptory writ of mandamus requiring the respondent clerk to accept and file his declaration of candidacy for the office of sheriff of Cole county, as he has no other adequate remedy.

The respondent has refused to accept and file said declaration for the sole reason that the relator Scott is not eligible to the said office because relator was elected sheriff of Cole county in 1906 and duly qualified as such and is now the incumbent of said office and

is therefore not eligible or competent to hold the same for the succeeding term of four years prescribed by the constitutional amendment relating to the office of sheriff, adopted at the general election in the year 1906. In other words, respondent insists that the constitutional amendment of 1906 prescribes a condition of ineligibility to the office of sheriff, to-wit, that "he shall be eligible only four years in any one period," which applies to the case of the relator, and to permit him to be elected and hold such office for the four years after the general election in 1908 would allow him to hold the said office of sheriff for six years continuously in direct violation of the express mandate of the organic law of this State, and that in computing the time, the two years which relator has and will have held said office from the election in 1906 to the election in 1908 must be construed as a part of the period during which he can only be eligible for four years. On the other hand, relator contends that, inasmuch as he was elected under the provisions of section 10 of article 9 of the Constitution of 1875, and said section was repealed by the amendment of 1906, and said amendment was and is wholly prospective in its purpose, it has no application to his case and he is eligible. To which contention the Attorney-General replies that it is not a question of the prospective operation of the amendment but is one of eligibility, a question of fact; whether the cause of the ineligibility arose before or after the adoption of the amendment, he contends is immaterial.

The settled rule of construction in this State, applicable alike to the constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only. [State ex rel. v. Greer, 78 Mo. l. c. 190; State ex rel. v. Frazier, 98 Mo. 426; Leete v. Bank, 141 Mo. 574; Shields v. John-

son County, 144 Mo. 76; Cooley on Constitutional Lim. (6 Ed.), page 77; Shreveport v. Cole, 129 U. S. 36.] In the instant case is there anything in the Constitutional amendment relating to sheriffs and the term of their office that indicates it was the intention that it should have a retrospective effect? While the amendment became a part of the Constitution of this State from the time of the canvass of the vote thereon by the Secretary of State in 1906, by its terms it was not to have actual operation and practical effect until the election in 1908, the first time when an election for sheriff was to be held under its provisions. That a statute or constitutional provision may have a potential existence, but which will not go into actual operation until a future time, is familiar law. [State ex rel. v. Wilcox, 45 Mo. l. c. 464; State ex rel. v. Pond, 93 Mo. l. c. 625; Ex parte Snyder, 64 Mo. l. c. 61.] Having special regard to the provision itself, it will be noted that it provides: "There shall be elected by the qualified voters in each county on the first Tuesday after the first Monday in November, A. D. 1908, and thereafter every four years, a sheriff and coroner." While it is contended by the Attorney-General that the relator was holding his office under the amendment from the date of his qualification on January 1st, 1907, we think it is obvious that he was holding under old provision under which he was elected, otherwise he would have no title to his office for the two years prior to the election of 1908, because the amendment of 1906 makes no provision whatever for the incumbency of the office of sheriff from 1906 to 1908. After providing for an election, by the qualified voters in each county, of a sheriff, on the first Tuesday following the first Monday in November, 1908, and thereafter every four years, the amendment proceeds, "They shall serve for four years and until their successors be duly elected and qualified." Unquestionably, "they" in this sentence refers to those

elected in 1908; the amendment then continues, "Before entering on the duties of their office, *they* (that is to say, those elected in 1908, and their successors in office) shall give security in the amount and in the manner as shall be prescribed by law, and shall be eligible only four years in any one period," evidently again referring to those elected in 1908, and their successors.

But for the unequivocal language of the amendment itself there would be great force in the argument that the provision limiting the term of a sheriff to four years is one of eligibility, which might refer to the past incumbency of the office as well as the future, but when it is borne in mind that the amendment of 1906 leaves nothing to implication but expressly repeals the former constitutional provision, to-wit, section 10 of article 9, of the Constitution of 1875, it seems to us that it marks a departure in the law and creates a new rule for the future. Much has been said in regard to the long established public policy of the State in fixing in former constitutions the limitation of the term of a sheriff to four years in certain specified periods; thus, in the Constitution of 1865, section 22, article 5, it is provided that "a sheriff shall be eligible four years in any period of eight years," and as we have already seen in the Constitution of 1875 he was limited to a term of four years in any six years. While "public policy has been declared to be the handmaiden of sound legal exposition" it has also been declared to be "a very unruly horse." Judge Story, in his work on Contracts (2 Ed.), volume 1, section 546, says: "It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. This rule may, however, be safely laid down, that wherever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void, as being against public policy."

[Kitchen v. Greenabaum, 61 Mo. 110.]  On the other hand, it has been said by courts of great ability, "When we speak of the public policy of the State we mean the law of the State whether found in the Constitution, the statute or judicial records." [People v. Hawkins, 157 N. Y. l. c. 12; Vidal v. Girard's Exrs., 2 How. (U. S.) 127; Dammert v. Osborn, 140 N. Y. l. c. 40.]  Having in mind, then, these various changes of our fundamental law on the subject of sheriffs, it is obvious, we think, the public policy of the State has changed from time to time, and we must look to the Constitution itself at the present time to ascertain what the public policy is. As we have seen the language of the amendment *ex vi termini* confines the ineligibility of a sheriff to those sheriffs to be elected in November, 1908, and those to be elected every four years thereafter.  While on the one hand, it may be argued with much plausibility that it was the purpose of the people that no sheriff should hold over four years continuously in any period of time, it may with equal force, we think, be argued that as the fundamental law was being changed, it was deemed best to have it operate entirely in the future, and not render a sheriff, who has held only one term of two years, ineligible to be elected under its provisions and thus deprive him of the right of re-election, which he would have had under the Constitution before its amendment, inasmuch as his election under the new amendment would apply only to those who had held the office of sheriff at the time of the adoption of the amendment, and in the future would work absolute equality to all sheriffs thereafter elected.  But, however that may be, it must be borne in mind that in endeavoring to reach the meaning of the provision under consideration, there is a well-settled rule of interpretation, to-wit, "Where no exceptions are made in terms, none will be made by mere implication or construction." [Rhode Island v. Mass., 12 Peters (U. S.) l. c. 722.]

This rule of construction has often been applied in this State. [Rogers v. Brown, 61 Mo. 1. c. 194; State ex rel. v. Fisher, 119 Mo. 344, 1. c. 351.] In Dwarris on Statutes, 199, 200, it is said: ''Words cannot be inserted; 'every day,' said PATTERSON, J., in a late case, 'I see the necessity of not importing into statutes words which are not to be found there. Such a mode of interpretation only gives occasion to endless difficulties.' In Lamond v. Eiffe, 3 Q. B. Rep. 910, Lord DENMAN said, 'We are required to add some arbitrary words to the section, which would exclude us from acting in certain cases. We cannot introduce any such qualifications; and I cannot help thinking that the introduction of qualifying words in the interpretation of statutes is frequently a great reproach to the law. None of the distinctions suggested are contained in the plain words of the act; and we cannot qualify them by any arbitrary introductions.' So, in Everett v. Wells, 2 Scott's N. Rep. 531, TINDAL, C. J., said, 'It is the duty of all courts to confine themselves to the words of the Legislature, nothing adding thereto, nothing diminishing. We must not import into an act a condition or qualification which we do not find there.' ''

While, therefore, holding that the amendment does not render a sheriff, who has held a term under section 10 of article 9 of the Constitution of 1875 immediately before the adoption of the amendment of 1906, ineligible to the office of sheriff to be filled at the election in 1908, and thus enable him to hold continuously for more than four years, after all this is but an incident of the change from the Constitution as it was in 1875 to the provision as it exists since the amendment of 1906, and this must have been evident to the author of the amendment and could have readily been avoided by inserting a proviso that sheriffs who had served one or two regular terms should not be eligible to the office at the election in 1908. But the fact that no such pro-

vision was made in the amendment supports our conclusion that such was not the intention of the framers of this amendment nor of the people when they adopted it. Our conclusion is that the relator is eligible to the office of sheriff to be filled at the general election in November next and is not precluded by the amendment in regard to sheriffs, adopted in 1906 and known as section 10 of article 9 of the Constitution, and accordingly he is entitled to a peremptory writ of mandamus directing the respondent to accept and file his declaration of his candidacy for said office, and it is so ordered. *Burgess, Valliant, Fox, Graves* and *Woodson, JJ.*, concur; *Lamm, J.*, dissents.

## DISSENTING OPINION.

LAMM, J.—Under our first Constitution, sheriffs were "ineligible four years in any period of eight years." [Const. 1820, art. 4, sec. 23.]

Under that of 1865, sheriffs were "ineligible four years in any period of eight years." [Const. 1865, art. 5, sec. 22.]

Under that of 1875, sheriffs were "eligible only four years in any period of six." [Const. 1875, art. 9, sec. 10.]

Under each of said constitutions the term of office of sheriffs was two years, and sheriffs in Missouri have always been on the dignified plane of constitutional officers, constitutionally regulated.

By an amendment in 1906, section 10 of article 9, *supra*, was stricken out and a new section adopted which, so far as material, reads:

"Section 10. There shall be elected by the qualified voters in each county on the first Tuesday next following the first Monday in November, A. D., 1908, and thereafter every four years, a sheriff and coroner. They shall serve for four years and until their succes-

sors be duly elected and qualified, unless sooner removed for malfeasance in office. Before entering on the duties of their office, they shall give security in the amount and in such manner as shall be prescribed by law and *shall be eligible only four years in any one period.*"

The constitutional provisions now in force relating to sheriffs are section 10, *supra* (*i. e.*, the amendment of 1906), and section 11 of article 9 of the Constitution of 1875, relating to vacancies, the last clause of which reads: "No person elected or appointed to fill a vacancy in either of said offices [sheriff or coroner] shall *thereby* be rendered ineligible for the succeeding term."

Relator was elected sheriff of Cole county at the same general election in November, 1906, adopting section 10, *supra,* and repealing the old section 10. Having qualified, he took office on January 1st, 1907. The question here is: Is he eligible to a term of four years more, making an official incumbency of six consecutive years in the office of sheriff? Indeed under the construction given to the Constitution by my learned brother GANTT, concurred in by five of the brethren, it is a matter of no consequence whatever whether he held his term of office for only two years, or whether he held four years in the preceding six. In other words, the argument runs that the restrictions of the old Constitution no longer amount to anything, and, old things having passed away and all things having become new, a sheriff, ineligible under the old was made eligible by the new provision, and may thus serve eight consecutive years in a pinch.

I do not concur in that interpretation of the Constitution and put my non-concurrence on the following grounds:

(a) Section 10, article 9 (the amendment), must be read in connection with old section 11 of the same

article, which was not repealed but remains live law. The two sections, the new and the old, must be made to dove-tail into each other without joint or seam if possible in order to make a harmonious and sensible fundamental law. Now, by said section 11 it is provided that a sheriff who is elected or appointed to fill a vacancy shall not (by that fact) be rendered ineligible for a succeeding term. In this condition of things,. by a familiar principle of construction, the maxim *expréssio unius,* a maxim peculiarly applicable to the interpretation of constitutional provisions (Henderson v. Koenig, 168 Mo. l. c. 369), should be held to apply— *i. e.,* by pointing out and including the term of a vacancy filled by appointment or election as *not* constituting an element of ineligibility for a succeeding term, it should be held that any term not coming within the designation of filling a vacancy *does* constitute an element of ineligibility where by adding two terms you have more than "four years in any one period."

(b) So, too, I am unable to perceive that it makes any difference whether the term relator served was under the old constitutional provision or under the new, so long as it was under one or the other, and so long as the two terms taken together make a continuous service contrary to either. The question is one of eligibility and to my mind how the fact of ineligibility arose is wholly beside the case so long as it actually exists.

(c) A constitutional amendment is merely a provision of paramount law—a *plebiscitum*—a law initiated by the General Assembly and adopted by the people by way of *referendum.* Rules of constitutional construction do not essentially differ from rules of statutory construction [8 Cyc. 729.] The object of construing either statutes or Constitution, in order to do refined and exalted justice, is to discern the intendment of the law and enforce that intendment. To get at

that end it is trite doctrine that we should consider the former state of the law, the new provision, the evil sought to be removed, as well as the remedy provided, and so construe the law as to further the remedy and retard the evil.

In Heydon's case, 3 Coke 18, the rule was quaintly and strongly put in this way: "That for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law,) four things are to be discerned and considered: 1st. What was the common law before the making of the act. 2nd. What was the mischief and defect for which the common law did not provide. 3rd. What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth. And, 4th. The true reason of the remedy; and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief   .   .   .   .   and to add force and life to the cure and remedy, according to the true intendment of the makers of the act, *pro bono publico*."

Dropping the phrase "common law" and substituting for that phrase the word "constitution," we may paraphrase Sir Edward Coke's rule and ask (1) what was the provision of the Constitution in the particulars in hand before the amendment? (2) What was the mischief and defect for which the Constitution did not provide? (3) What remedy did the people resolve and appoint to cure the disease? (4) And what was the true reason for the remedy?. When true answers to these questions are discerned, it would seem to be our bounden duty to make such construction as shall, without doing violence to the language employed in the Constitution, suppress the mischief and advance the remedy.

What were the provisions of the Constitution in the

particulars in hand before the amendment of 1906? Those provisions have been set forth and are in no wise dark. In every constitution since Missouri has been a State there has been an express, definite limitation on the continuous service of a sheriff in office for more than four years in six. It was not said that every man shall serve as sheriff four years in six, but that no man shall serve more. In the two earlier the limit was four years in eight, but as the greater includes the less, so eight includes six, therefore under the two earlier, as in that of 1875, a continuous service of more than four years in six would have been in violation of those constitutions. What was the mischief struck at by the amendment of 1906? Did the framers of the act and the people adopting that act mean to *lengthen* the possible continuous service of any sheriff? Not at all. To the contrary, the amendment *ex vi termini* is an interdiction on a continuous official term of more than four years, precisely as it was before. Obviously the mischief struck at was to do away with sheriffs running for re-election while occupying official terms and armed with official power as such, with the proviso that any term because of a mere vacancy was not an element of ineligibility.

The question has valuable historical side-lights showing a settled public policy (not only of our own constitutions but of the common law) in a rooted jealousy by the people of long official terms for sheriffs since the day of Alfred the Great. For instance, the sheriff at common law did the king's business in the county. Anciently, in some counties, the office of sheriff was hereditary, but it was provided as to others "that the commons might choose such as would not be a burden to them," and Blackstone points out that "sheriffs, by virtue of several old statutes, are to continue in their office no longer than one year." He was the keeper of the king's peace,

the first man in the county, and superior in rank to any nobleman therein, during his office. He had power to apprehend and commit to prison all persons who broke the peace, or attempted to break it; and might bind any one in recognizance to keep the king's peace. He was bound *ex officio* to pursue and take all traitors, murderers, felons and other misdoers and commit them to jail for safe custody. He was also to defend his county against any of the king's enemies when they came into the land, and for this purpose as well as for keeping the peace and pursuing felons he might command all male inhabitants of his county between certain ages to attend him as a *posse comitatus*. In his ministerial capacity the sheriff was bound to execute all process issuing from the king's courts of justice. In the commencement of a civil cause he was to serve the writ, to arrest and to take bail; when the cause came to trial he summoned and returned the jury; when determined, he saw the judgment of the court carried into execution. In criminal matters he also arrested and imprisoned. He returned the jury, had the custody of the delinquent, and executed the sentence of the court though it extended to death itself. [1 Blackstone, pp. 342-3-4.] He is now, as at common law, the chief citizen of the county, having in his keeping as a sacred charge, the public weal. For example: Many of these common law duties still attend the office of sheriff. He is now defined to be: "A county officer representing the executive or administrative power of the State within his county." [25 Am. and Eng. Ency. Law (2 Ed.), 662.]

By section 10044, Revised Statutes 1899, he is conservator of the peace within his county and is commanded to cause all offenders against the law, in his view, to enter into recognizance, with security, to keep the peace and to appear at the next term of the circuit court of the county, and to commit to jail in cases of

failure to give such recognizance. By section 10046 he is required to quell and suppress assaults and batteries, riots, routs, affrays and insurrections, to apprehend and commit to jail all felons and traitors and execute all process directed to him by legal authority. By other provisions he summons jurors, grand and petit, attends courts as the ministerial arm of the court, levies executions and summons witnesses.

With such power in his hands to bind or loose, to blink or see, the amendment of 1906 left him eligible to hold four consecutive years of office but struck down the mischief of his running for re-election. It cast all motes and beams from his official eye and left him an eye clear and single to his duty—an excellent eye for a sheriff to have. Behold, then, the mischief and the remedy. The mischief was in his canvassing for votes to secure a re-election tempting him, peradventure, beyond his strength, to misuse his official power or blink official duty. The remedy was to do away with biennial elections to the office and leave him four years as *one* term, not six years in two terms, as here.

The opinion of my brother it seems to me neither advances the remedy nor retards the mischief. Such interpretation is equivalent to adding a proviso to the amendment not there, to-wit: "Provided that sheriffs ineligible under the old Constitution because of length of service are made eligible by the new;" or a proviso to this effect: "Provided that all sheriffs now in office whether for the first or second term shall be eligible to re-election in the general election of 1908 for another term of four years."

(d) Could it possibly have been within the intendment of that act to give so singular an advantage to the then incumbents of the office?—an advantage denied for nearly a hundred years to all former sheriffs and denied to all that come after the present official term? If that be so then the amendment did not disclose all

its purpose. It was a Greek gift—a Wooden Horse with mischief in its bowels. It should have been written under the caption: "An Amendment to the State Constitution making the official Term of the Sheriff Four Years, and Removing all Restrictions on the Present Incumbents of that Office Succeeding themselves."

It cannot be that any hardship to those persons who were elected to the office in the general election of 1906 was within the purview of the amendment; because the grim humor of the situation is that those persons voluntarily ran for the office at the time the amendment was submitted and took their chances of its being adopted. All they have to do is to wait four years and run again if they choose. Eligibility to office is not an inherent right of citizenship, but is regulated by law.

(e) Again: the learned Attorney-General argues that "it is a settled principle of law, applicable alike to constitutions and statutes, that where an amendment is made which, in addition to the new and amendatory features, contains provisions which were also in the law superseded, the provisions common to both shall be construed as remaining in force, without break in continuity, in the transition from the old to the new." I take that proposition as sound law. [Cooley on Const. Lim. (7 Ed.), pp. 96-7.] Any other makes a gap in the law—a chaotic condition never to arise by construction, unless that interpretation be inevitable. It involves the idea that there was a space of time between 1906 and 1908 when there was no constitutional provision operative. Applying the above proposition to this case we find that the old constitution did not allow more than four years continuous service. We find the new contains the same provision. Hence, the provision being common to both continued in force during the transition period. Being in force at all times, I cannot understand why the interpretation placed upon

the Constitution by my brother is not in the face of both its spirit and letter; for the construction is that the present incumbents of the sheriff's office may have six consecutive years—nay, possibly eight. Whereas the construction suggested by the Attorney-General may allow them four years in the past, and, at most, denies but two years of a possible four, with a rest from official cares to be followed by eligibility at the end of such rest. The law was passed for the benefit of the people, not of the sheriffs, and the welfare of the people should be the touchstone of interpretation; for, observe, the welfare of the people is either the supreme law or we should get another motto for our great seal.

(f)  In Wright v. Adams, 45 Tex. l. c. 140, Moore, J., well said: "It is believed, moreover, to be a sound rule of construction which holds, when the duration or term of office which is filled by popular election is a question of doubt or uncertainty, that the interpretation is to be followed which limits it to the shortest time, and returns to the people at the earliest period the power and authority to refill it." See, also, "Opinion of the Judges," 114 N. C. (Appendix) loc. cit. 929; Throop's Public Officers, section 308. Therefore, even if we were to hold (as we may) that the amendment left the matter somewhat uncertain  and ambiguous, we ought further to hold as indicated in other paragraphs of this opinion, and thus solve the doubt in favor of the shortest term under the doctrine of Wright v. Adams, *supra*.

In my opinion the final writ should not go.