

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
Appellant, )
)
v. ) No. SC94096
)
MARCUS MERRITT, )
)
Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable John F. Garvey, Jr., Judge

*Opinion issued August 18, 2015*

PER CURIAM

The State appeals the circuit court's judgment that Missouri's "felon-in-possession law" is unconstitutional. Marcus Merritt was charged with three counts of unlawful possession of a firearm, § 571.070.1(1),[1] among other offenses. He filed a motion to dismiss the unlawful possession charges, claiming the law violated the Missouri Constitution's protection of his right to bear arms. The circuit court sustained Merritt's motion, and the State appeals.

While the appeal was pending, the Missouri Constitution's right to bear arms provision, article I, section 23, was amended to state that courts must apply "strict scrutiny" to laws restricting the right to bear arms. The prior version of article I,

---

[1] Statutory citations are to RSMo Supp. 2013 except where otherwise indicated.

section 23 applies in this case because this Court applies the constitution as it was written at the time of the offense. Nevertheless, this Court recently held in *Dotson v. Kander* that "strict scrutiny would have applied under the Missouri constitution," regardless of the recent amendment, to constitutional challenges that occurred during the time frame after the Supreme Court of the United States declared the right to bear arms fundamental to our scheme of ordered liberty and held the Second Amendment to the United States Constitution fully applicable to the states through the Fourteenth Amendment. *Dotson*, ___ S.W.3d ___, No. SC94482, 2015 WL 4036160, at \*4 n.5 (Mo. banc June 30, 2015); *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 750, 791 (2010); *id.* at 805-06 (Thomas, J., concurring in part, concurring in the judgment, and providing the necessary fifth vote). This Court holds that this felon-in-possession law passes strict scrutiny. The circuit court's judgment is reversed, and the case is remanded.

## Factual and Procedural History

Merritt was convicted in 1986 of federal felony distribution of phencyclidine (PCP). He was charged in January 2013 with three counts of unlawful possession of a firearm, § 571.070.1(1), for knowingly possessing a revolver, a shotgun, and a .22 caliber rifle on or about November 7, 2012, while being a convicted felon. He was also charged with one count of possession of a controlled substance, § 195.202, and one count of unlawful use of drug paraphernalia, § 195.233, RSMo 2000.

Merritt filed a motion to dismiss the indictment, arguing § 571.070.1(1) violated his right to bear arms under the Missouri Constitution, article I, section 23, and the Missouri Constitution's prohibition against laws retrospective in their operation, article I,

section 13. The circuit court sustained the motion and dismissed the three unlawful possession counts with prejudice. Merritt then pleaded guilty to the other charges. The State filed a notice of appeal in the court of appeals, which transferred the case to this Court prior to opinion.[2] *See* Mo. Const. art. V, § 11.

## Standard of Review

Rule 24.04(b)(1) permits a criminal defendant to raise "[a]ny defense or objection which is capable of determination without trial of the general issue . . . before trial by motion." The circuit court's judgment sustaining Merritt's motion to dismiss on constitutional grounds is a final judgment from which the State may appeal. *State v. Honeycutt*, 421 S.W.3d 410, 413 (Mo. banc 2013). This Court has not addressed the standard of review of a judgment sustaining a motion to dismiss a criminal indictment, but civil cases are instructive. "If a trial court fails to state a basis for its dismissal, this Court presumes the dismissal was based on the grounds stated in the motion to dismiss." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 391 (Mo. banc 2001). "If the dismissal is justified on any ground alleged in the motion, . . . the judgment will be affirmed." *Anderson v. Union Elec. Co.*, ___ S.W.3d ___, No. SC94372, 2015 WL 3759781, at *2 (Mo. banc June 16, 2015).

This Court has exclusive jurisdiction over this appeal pursuant to article V, section 3 because it involves the constitutional validity of a statute. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 51 (Mo. banc 1999). "Statutes are presumed constitutional and

---

[2] Following transfer, the amendment to article I, section 23 went into effect. The parties then filed amended briefs in this Court.

3

will be found unconstitutional only if they clearly contravene a constitutional provision." *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. banc 2012). Constitutional challenges are issues of law this Court reviews *de novo*. *Estate of Overbey v. Chad Franklin Nat'l Auto Sales North, LLC*, 361 S.W.3d 364, 372 (Mo. banc 2012).

**Analysis**

The State argues the circuit court erred by dismissing the three counts of unlawful possession of a firearm because § 571.070.1(1) does not violate Merritt's right to bear arms, article I, section 23, or the prohibition against laws retrospective in their operation, article I, section 13. Merritt now concedes that the statute does not violate the ban on the passage of retrospective laws given this Court's recent holding that "article I, section 13's ban on the passage of any law retrospective in its operation does not apply to criminal laws." *State v. Honeycutt*, 421 S.W.3d 410, 413 (Mo. banc 2013). The sole issue is whether § 571.070.1(1) violates article I, section 23's protection of Merritt's right to bear arms. This Court holds that it does not.[3]

"A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and . . . [s]uch person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony." Section

---

[3] Merritt's brief to this Court also claims the statute violates the Second Amendment to the United States Constitution. The Second Amendment is not at issue here because Merritt's motion to dismiss did not raise it, and this Court presumes the circuit court's dismissal was based only on the grounds stated in the motion. *See Lueckenotte*, 34 S.W.3d at 391.

4

571.070.1(1). Article I, section 23 was amended as follows while this appeal was pending:

> That the right of every citizen to keep and bear arms, **ammunition, and accessories typical to the normal function of such arms,** in defense of his home, person, **family** and property, or when lawfully summoned in aid of the civil power, shall not be questioned~~; but this shall not justify the wearing of concealed weapons~~. **The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity.**

*Dotson*, 2015 WL 4036160, at *11. Both parties argue that the new version of article I, section 23 applies retroactively to this case. The State also argues, in the alternative, that the previous version of article I, section 23 applies because it was in effect at the time of McCoy's offense and that, regardless, § 571.070.1(1) survives under either version.[4]

## I. The Prior Version of Article I, Section 23 Applies

The parties claim that the new version of article I, section 23 applies retroactively because this case was not yet final when the amendment went into effect, citing *Griffith v. Kentucky*, 479 U.S. 314 (1987). In *Griffith*, the Supreme Court of the United States held "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." 479 U.S. at 328. *Griffith* does not govern the retroactivity of newly enacted state

---

[4] For this reason, the State has not conceded the issue of retroactivity, and this Court need not decide whether the State may bind this Court by doing so.

constitutional amendments, only newly stated procedural rules of federal constitutional law.

"The settled rule of construction in this state, applicable alike to the Constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only." *State ex rel. Scott v. Dircks*, 111 S.W. 1, 3 (Mo. banc 1908). This Court gives only prospective application to a constitutional amendment unless it finds "a contrary intent that is spelled out in clear, explicit and unequivocal detail so that retrospective application is called for 'beyond []a[] reasonable question.'" *State ex rel. Hall v. Vaughn*, 483 S.W.2d 396, 398-99 (Mo. banc 1972). The amended version of article I, section 23 does not have any text that suggests it was intended to be applied retroactively. Therefore, it applies prospectively only. *Hall*, 483 S.W.2d at 398-99; *Scott*, 111 S.W. at 3.

## II. Strict Scrutiny Applies Under the Prior Version of Article I, Section 23

This Court recently held, while this case was pending, that strict scrutiny applies under the prior version of article I, section 23 to cases arising in the time frame after *McDonald* was decided, regardless of the recent amendment. *Dotson*, 2015 WL 4036160, at *4 n.5. Previously, the Supreme Court of the United States held, in *District of Columbia v. Heller*, that the Second Amendment protects an individual's right to possess an operable handgun in the home for self-defense, without deciding what level of constitutional scrutiny applies: "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail

6

constitutional muster." 554 U.S. 570, 628-29 (2008) (internal citations, quotation marks, and footnote omitted). In 2010, the Supreme Court held that the right to bear arms recognized in *Heller* is a right fundamental to our scheme of ordered liberty and fully applicable to the states through the Fourteenth Amendment. *McDonald*, 561 U.S. at 750, 791; *id.* at 805-06 (Thomas, J., concurring in part, concurring in the judgment, and providing the necessary fifth vote). Following those decisions, the State charged Merritt with unlawfully possessing firearms on or about November 7, 2012, the circuit court dismissed the charges, and this Court assumed jurisdiction of the State's appeal.

Then came the *Dotson* case, which was filed in this Court and briefed, argued, and decided while Merritt's appeal was pending. *Dotson* was a challenge to the ballot summary of the constitutional amendment. 2015 WL 4036160, at *1. The challengers argued that the ballot language was inadequate to inform voters that strict scrutiny would apply to laws affecting the right to bear arms under the Missouri Constitution. *Id.* at *4. This Court held as follows:

> Even though [the amendment] set out strict scrutiny as the standard, that standard would already have been applicable to cases where the legislation was challenged based on article I, section 23 of the Missouri Constitution after *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). Although the Supreme Court of the United States did not announce a level of judicial scrutiny in *Heller,* it held in *McDonald* that the right to bear arms is a fundamental right that applies to the states. 561 U.S. at 791, 130 S.Ct. 3020. Because this Court reviews laws affecting fundamental rights under the strict scrutiny standard, *Etling v. Westport Heating & Cooling Servs., Inc.,* 92 S.W.3d 771, 774 (Mo. banc 2003), strict scrutiny would have applied under the Missouri constitution had a challenge been made. By declaring the right to bear arms "unalienable" and imposing strict scrutiny, [the amendment] could be understood to be nothing more than a declaration of the law as it would have been declared by this Court after

7

*McDonald* mandated that the fundamental right to bear arms applied to the states.

*Id.* at \*4 n.5. This conclusion was necessary to this Court's analysis and resolution in *Dotson* and was, therefore, a holding of the Court. If the constitutional amendment had *changed* the level of scrutiny under article I, section 23 to strict scrutiny, the Court might have considered the ballot summary at issue in *Dotson* unfair or insufficient. But this Court held that strict scrutiny would have applied under the prior version of article I, section 23 in the time frame after *McDonald* was decided, irrespective of the amendment.[5]

Merritt was charged with unlawfully possessing firearms after *McDonald* was decided. Therefore, as this Court necessarily held in *Dotson*, strict scrutiny applies.

### III.  Section 571.070.1(1) Survives Strict Scrutiny

"[T]here is no settled analysis as to how strict scrutiny applies to laws affecting the fundamental right to bear arms, which has historically been interpreted to have accepted limitations." *Id.* at \*4. Additionally, the application of strict scrutiny depends on context, including the controlling facts, the reasons advanced by the government, relevant differences, and the fundamental right involved. *See Grutter v. Bollinger*, 539 U.S. 306, 327 (2003); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 246 (1995); Adam

---

[5] This Court is not deciding that strict scrutiny would apply to Second Amendment challenges. The concurring opinion claims *Dotson*'s holding was wrong because the Supreme Court of the United States declined to adopt strict scrutiny as the Second Amendment standard in *Heller* and *McDonald*. The Second Amendment was not at issue in *Dotson*, and it is not at issue in this case. Strict scrutiny applies as a matter of state law, not because of a determination that the Second Amendment requires strict scrutiny.

8

Winkler, *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 VAND L. REV. 793, 795–96 (2006).

Accordingly, "that strict scrutiny applies 'says nothing about the ultimate validity of any particular law; that determination is the job of the court applying' the standard." *Dotson.* 2015 WL 4036160, at *4 (quoting *Adarand*, 515 U.S. at 230). "Courts routinely uphold laws when applying strict scrutiny, and they do so in every major area of the law." Winkler*, supra*, at 795-96. A study of all published federal court applications of strict scrutiny over a span of 13 years found that laws survived strict scrutiny 30% of the time. *Id.* Moreover, the same study found courts upheld laws more often in religious liberty cases than in cases involving suspect class discrimination, free speech, freedom of association, and other fundamental rights. *Id.* at 796–97.

It is clear that laws regulating the right to bear arms are not "presumptively invalid." *Dotson.* 2015 WL 4036160, at *5. In *Dotson*, this Court recognized that the Supreme Court's decisions in *Heller* and *McDonald* did not cast doubt on "'longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" *Id.* at *5.

"[S]trict scrutiny is generally satisfied only if the law at issue is 'narrowly tailored to achieve a compelling interest.'" *Id.* at *4. Section 571.070.1(1) is narrowly tailored to achieve a compelling governmental interest. The State has a compelling interest in ensuring public safety and reducing firearm-related crime. *See In re Care & Treatment*

9

*of Norton*, 123 S.W.3d 170, 174 (Mo. banc 2003) ("The State has a compelling interest in protecting the public from crime."). Prohibiting felons from possessing firearms is narrowly tailored to that interest because "[i]t is well-established that felons are more likely to commit violent crimes than are other law abiding citizens." *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011). Furthermore, "someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use."[6] *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010).

As this Court noted in *Dotson*, decisions of the Supreme Court of Louisiana are persuasive on this issue. 2015 WL 4036160, at *5. Like Missouri, the people of the State of Louisiana amended their state constitution to clarify that strict scrutiny applies to laws restricting the right to bear arms. *Id.* The Supreme Court of Louisiana has recently upheld, under strict scrutiny, a law banning persons who have committed certain dangerous and potentially dangerous felonies from possessing firearms or carrying concealed weapons for ten years. *State v. Eberhardt*, 145 So. 3d 377, 385 (La. 2014). That court found "'a long history, a substantial consensus, and simple common sense' to be sufficient evidence for even a strict scrutiny review." *Id.*

---

[6] Both parties cite statistics from a study conducted by the FBI showing an increase in violent crime in Missouri between 2011 and 2012. The State claims the rise in violent crime is why its interest is particularly compelling. Merritt claims the study proves the law's failure to achieve its purpose, because violent crime should have decreased since 2008, which is when the Missouri law was expanded. These statistics do not bear on the constitutional analysis because they prove nothing about the law's design. Moreover, an FBI study for the year 2013, however, shows a decrease in violent crime to below the 2011 level. This is merely one example of why the ever-changing body of science and statistics is ill-suited to constitutional analysis. *Crime in the United States by State, 2013: Table 5*, FBI.GOV (last visited August 12, 2015), *available at* https://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/tables/5tabledatadecpdf/table_5_crime_in_the_united_states_by_state_2013.xls (on file with this Court).

The Supreme Court of Louisiana also has upheld other types of restrictions under strict scrutiny. These include laws prohibiting the carrying of concealed weapons without a permit and prohibiting minors from possessing handguns in certain circumstances, *State in the Interest of J.M.*, 144 So.3d 853, 863, 866 (La. 2014), a law banning the possession of a firearm while engaged in drug use and distribution, *State v. Webb,* 144 So.3d 971, 979, 983 (La. 2014), and a felon-in-possession law as applied to offenders remaining under the supervision of the Louisiana department of corrections, *State v. Draughter*, 130 So.3d 855, 868 (La. 2013). *Cf., e.g.*, *United States v. Marzzarella*, 614 F.3d 85, 101 (3d Cir. 2010) (holding that a federal law banning possession of a firearm with an altered serial number "would pass muster under either intermediate scrutiny or strict scrutiny"); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (holding, before *Heller* was decided, that the federal law banning felons from possessing firearms was "a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms protected under the Second Amendment"); *United States v. Chovan*, 735 F.3d 1127, 1139-41 (9th Cir. 2013) (upholding, under intermediate scrutiny, a federal law prohibiting gun possession by those who have been convicted of misdemeanor domestic violence offenses because the law was "substantially related to the important government interest of preventing domestic gun violence"); *State v. Smith*, 571 A.2d 279 (N.H. 1990) (holding that New Hampshire's felon-in-possession law, which applied to drug felonies, felonies against persons, and felonies against property, "narrowly serve[d] a significant

11

governmental interest in protecting the general public" even though "[c]onceivably some felons falling within the reach of [the statute] are not potentially dangerous").

Merritt argues that § 571.070.1(1) is not narrowly tailored to achieve the State's interest because it bans "*all* convicted felons under *all* circumstances from possessing firearms *for life*" and "has no exception for the inherent right of self-defense or defense of others." Resp. Br. at 22-23. He claims § 571.070.1(1) is overbroad because it could have contained a self-defense exception; that it could have applied only to violent felonies, dangerous felonies, or some other subset of felonies; or to "concealable" firearms only; or just for a period of years; or until the person qualifies for some form of reinstatement. He points to statutes from other jurisdictions, which contain some of these limits, and he claims other Missouri statutes are less restrictive. For example, incapacitated persons may have their gun rights restored, § 571.092.1; intoxicated persons may possess firearms for purposes of self-defense, § 571.030.1(5), RSMo Supp. 2014; voting rights may eventually be restored for many felons, §§ 115.133.2; 561.026; many felons may eventually hold public office (except sheriff), §§ 561.021.2, RSMo 2000; 57.010; and many felons cannot be denied an occupational or professional license based primarily on a conviction, § 314.200, RSMo 2000.

But narrow tailoring "does not require exhaustion of every conceivable . . . alternative." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). Section 571.070.1(1) does not apply to any misdemeanors, unlike the federal felon-in-possession law, which applies to misdemeanor domestic violence offenses. *See* 18 U.S.C. § 922(g)(9) (2006). It does not apply to felony convictions that have been pardoned or expunged (although

12

expungement would not be available for Merritt's federal conviction). It does not apply to possession of antique firearms. *See* § 571.070.3. And it does not prevent self-defense—just possessing firearms.

Many of the restrictions Merritt argues the General Assembly should have included in § 571.070.1(1) appear in other statutes and previous versions of the same law. The felon-in-possession law, which bans felons from possessing firearms, with no exceptions other than possessing an antique firearm, is sufficiently narrowly tailored to achieve the compelling interest of protecting the public from firearm-related crime. Therefore, it passes strict scrutiny.

## Conclusion

The circuit court's judgment dismissing the three counts of unlawful possession of a firearm is reversed, and the case is remanded.

Breckenridge, C.J., Fischer, Wilson and Russell, JJ., concur;
Draper, J., concurs in result in separate opinion filed;
Teitelman, J., concurs in opinion of Draper, J.;
Stith, J., concurs in result and concurs in opinion of Draper, J.

13



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,             )
                                  )

          Appellant,       )
                                  )

vs.                            )      No. SC94096
                                  )

MARCUS MERRITT,          )
                                  )

          Respondent.     )

## OPINION CONCURRING IN RESULT

I concur with the principal opinion's holding that section 571.070 is constitutional under article I, section 23, as it was written at the time Marcus Merritt (hereinafter, "Merritt") was charged with his crimes. Consistent with my position in *Dotson v. Kander*, --- S.W.3d ---, 2015 WL 4036160, (No. SC94482) (Mo. banc 2015), I disagree that strict scrutiny must be applied to any right to bear arms claim brought under article I, section 23 as it was written prior to the 2013 amendment. Accordingly, I concur in result only.

The principal opinion relies on *District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S. Ct. 2783, 2799, 171 L.Ed.2d 637 (2008), *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 791, 130 S. Ct. 3020, 3050, 177 L.Ed.2d 894 (2010), and *Dotson* to support its position that Missouri courts are obligated to apply strict scrutiny when

reviewing section 571.070's constitutional validity. A careful reading of these cases does not compel such a result.

The *Heller* Court declined to establish a level of scrutiny when it evaluated the Second Amendment restriction. *Heller*, 554 U.S. at 634. In a footnote, the United States Supreme Court stated judicial review required something more than "rational basis" because "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Id*. at 629, n.27. Further, *Heller* found that the right to keep and bear arms is not unlimited and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. The *Heller* Court was careful to point out: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places …." *Id*. at 626-27. The Supreme Court went on to identify prohibitions against felons possessing firearms as "presumptively lawful regulatory measures." *Id*. at n.26.

Two years after *Heller*, the United States Supreme Court extended the Second Amendment's application to the states by virtue of the Fourteenth Amendment's Due Process Clause. *McDonald*, 561 U.S. 742 at 791. However, the Supreme Court again judiciously avoided naming or applying a particular level of scrutiny when reviewing this fundamental right. *McDonald*, 561 U.S. at 782-84.

2

This Court in *Dotson* resolved an election contest concerning the fairness and sufficiency of the ballot title for the new amendment to article I, section 23, which failed to apprise Missouri voters that "strict scrutiny" would apply to any restriction on the right to bear arms. *Dotson*, at \*4, n.5. The per curiam opinion in *Dotson* recognized there was no settled analysis under federal law or Missouri law defining a particular level of judicial scrutiny regarding firearms regulations. *Id.* However, in a footnote, the per curiam opinion surmised for the first time that "strict scrutiny would have applied under the Missouri constitution had a challenge been made" under article I, section 23 after *McDonald* because the United States Supreme Court stated the right to bear arms is a fundamental right. *Dotson*, at \*4, n.5. The principal opinion now asserts it is bound to follow its advisory determination in *Dotson* now that an actual challenge has reached this Court.

In addition to reaching the issue before it was ripe, I believe *Dotson* is incorrect and decisively erroneous on this issue because, despite recognizing the right to keep and bear arms as a fundamental right, *Heller* and *McDonald* specifically declined the invitation to apply strict scrutiny and explicitly avoided stating what type of scrutiny would apply to cases challenging the right to bear arms. *Heller*, 554 U.S. at 628-29; *McDonald*, 561 U.S. at 782-84. Instead, *Heller* merely states: "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, would fail constitutional muster." *Heller*, 554 U.S. at 628-29 (internal citation and quotation marks omitted).

3

If the United States Supreme Court purposefully sidestepped applying a particular level of scrutiny in two cases involving this fundamental right, this Court in *Dotson* was not, as the principal opinion now proclaims, beholden to apply strict scrutiny in an effort to follow the holdings in *Heller* and *McDonald*. Likewise, the principal opinion need not reach that far to uphold section 571.070 in this case.

Despite my disagreement about the appropriate standard of review to apply to article 1, section 23 challenges raised prior to the 2013 amendment, section 571.070 can be upheld under the less rigorous standard articulated in *State v. Richard*, 298 S.W.3d 529 (Mo. banc 2009), and *State ex rel. Kansas City, Mo. v. Pub. Serv. Comm'n*, 524 S.W.2d 855, 862 (Mo. banc 1975). Those cases stated a reviewing court should examine whether a statute professing to be an exercise of the state police power has a real and substantial relationship to the protection of public safety and does not invade constitutional rights unjustifiably. *Id.* Here, section 571.070, a statute constituting an exercise of the state's police power, is constitutional because it has a real and substantial relationship to the protection of the public safety by regulating the possession of firearms by convicted felons and does not unjustifiably invade rights secured by the constitution. Accordingly, I concur in the result reached by the principal opinion reversing the circuit court's judgment dismissing the counts against Merritt.

_____
GEORGE W. DRAPER III, JUDGE

4