PER CURIAM
Santonio McCoy appeals his conviction of unlawful possession of a firearm. Section 571.070.l(l).[1] He claims this “felon-in-possession law” violates the Missouri Constitution’s protection of his right to bear arms.
While the appeal was pending, the Missouri Constitution’s right to bear arms provision, article I, section 23, was amended to state that courts must apply “strict scrutiny” to laws restricting the right to bear arms. The prior version of article I, section 23 applies in this case because this Court applies the constitution as it was written at the time of the offense. Nevertheless, this Court recently held in Dotson v. Kander that “strict scrutiny would have applied under the Missouri constitution,” regardless of the recent amendment, to constitutional challenges that occurred during the time frame after the Supreme Court of the United States declared the right to bear arms fundamental to our scheme of ordered liberty and held the Second Amendment to the United States *894 Constitution fully applicable to the states through the Fourteenth Amendment. Dotson, 464 S.W.3d 190,197 n. 5 (Mo. banc 2015); McDonald v. City of Chicago, Illinois, 561 U.S. 742, 750, 791, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010); id. at 805-06, 130 S.Ct. 3020 (Thomas, J.,. concurring in part, concurring in the judgment, and providing the necessary fifth vote). This Court holds that this felon-in-possession law passes strict scrutiny. The circuit court’s judgment is affirmed.
Factual and Procedural History
McCoy was caught possessing a pistol on or about June 23, 2012. He had prior felony convictions at the time, specifically, stealing, burglary, tampering, unlawful use of a weapon, and resisting or interfering with arrest. As a result, McCoy was charged in August 2012 with one count of unlawful possession of a firearm. He filed a motion to dismiss the indictment, arguing § 571.070.1(1) violated the Missouri Constitution’s prohibition against the passage of any law retrospective in its operation, article I, section 13, and his right to bear arms under article I, section 23 of the Missouri Constitution.[2] The circuit court overruled the motion. A jury found him guilty, and he was sentenced as a prior and persistent offender to seven years’ imprisonment. McCoy then filed his appeal in the court of appeals. While the appeal was pending in that court, the amendment to article I, section 23 went into effect. The court of appeals then transferred the case to this Court prior to opinion. See Mo. Const, art. V, § 11.
Standard of Review
Rule 24.04(b)(1) permits a criminal defendant to raise “[a]ny defense or objection which is capable of determination without trial of the general issue ... before trial by motion.” This Court has exclusive jurisdiction over this appeal pursuant to article V, section 3 because it involves the constitutional validity of a statute. Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 51 (Mo. banc 1999). “Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision.” State v. Vaughn, 366 S.W.3d 513, 517 (Mo. banc 2012). Constitutional challenges are issues of law this Court reviews de novo. Estate of Overbey v. Chad Franklin Nat’l Auto Sales North, LLC, 361 S.W.3d 364, 372 (Mo. banc 2012).
Analysis
In his sole point on appeal, McCoy argues the circuit court erred by overruling his motion to dismiss the indictment because § 571.070.1(1) violates article I, section 23’s protection of his right to bear arms. This Court holds that it does not.[3]
“A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and ... [s]uch person has been *895 convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony.” • Section 571.070.1(1). Article I, section 23 was amended as follows while this appeal was pending:
That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned^ — bui-this weapons. The rights guaranteed by this sectidn shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity.
Dotson, 464 S.W.3d at 205-06. McCoy argues that the amended version of article I, section 23 applies retroactively to this case. The State argues that the previous version .of article I, section 23 applies because it was in effect at the time of McCoy’s offense and, in the alternative, that § 571.070.1(1) survives even if the new version applies.
I. The Prior Version of Article I, Section 23 Applies
McCoy claims that the new version of article I, section 23 applies retroactively because this case was not yet final when the amendment went into effect, citing Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In Griffith, the Supreme Court of the United States held “that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.” 479 U.S. at 328, 107 S.Ct. 708. Griffith does not govern the retroactivity of newly enacted state constitutional amendments, only newly stated procedural rules of federal constitutional law.
“The settled rule of construction in this state, applicable alike to the Constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only.” State ex rel. Scott v. Dircks, 211 Mo. 568, 111 S.W. 1, 3 (1908). This Court gives only prospective application to a constitutional amendment unless it finds “a contrary intent that is spelled out in clear, explicit and unequivocal detail so that retrospective application is called for ‘beyond [ ]a[ ] reasonable question.’ ” State ex rel. Hall v. Vaughn, 483 S.W.2d 396, 398-99 (Mo. banc 1972). The amended version of article I, section 23 does not have any text that suggests it was intended to be applied retroactively. Therefore, it applies prospectively only. Hall, 483 S.W.2d at 398-99; Scott, 111 S.W. at 3.
II. Strict Scrutiny Applies Under the Prior Version of Article I, Section 23
This Court recently held, while this case was pending, that strict scrutiny applies under the prior version of article I, section 23 to cases arising in the time frame after McDonald was decided, regardless of the recent amendment. Dotson, 464 S.W.3d at 197 n. 5. Previously, the Supreme Court of the United States held, in District of Columbia v. Heller, that the Second Amend *896 ment protects an individual’s right to possess an operable handgun in the home for self-defense, without deciding what level of constitutional scrutiny applies: “Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one’s home and family would fail constitutional muster.” 554 U.S. 570, 628-29, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (internal citations, quotation marks, and footnote omitted). In 2010, the Supreme Court held that the right to bear arms recognized in Heller is a right fundamental to our scheme of ordered liberty and fully applicable to the states through the Fourteenth Amendment. McDonald, 561 U.S. at 750, 791, 130 S.Ct. 3020; id. at 805-06, 130 S.Ct. 3020 (Thomas, J., concurring in part, concurring in the judgment, and providing the necessary fifth vote). Following those decisions, McCoy was charged in August 2012 with unlawfully possessing a firearm on or about June 23, 2012, for which he was tried and convicted. After McCoy filed his appeal in the court of appeals, the amendment to article I, section 23 went into effect. This Court then assumed jurisdiction of the appeal.
Then came the Dotson case, which was filed in this Court and briefed, argued, and decided while McCoy’s appeal was pending. Dotson was a challenge to the ballot summary of the constitutional amendment. 464 S.W.3d at 193. The challengers argued that the ballot language was inadequate to inform voters that strict scrutiny would apply to laws affecting the right to bear arms under the Missouri Constitution. Id. at 197. This Court held as follows:
Even though [the amendment] set out strict scrutiny as the standard, that standard would already have been applicable to cases where the legislation was challenged based on article I, section 23 of the Missouri Constitution after McDonald v. Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). Although the Supreme Court of the United States did not announce a level of judicial scrutiny in Heller, it held in McDonald that the right to bear arms is a fundamental right that applies to the states. 561 U.S. at 791, 130 S.Ct. 3020. Because this Court reviews laws affecting fundamental rights under the strict scrutiny standard, Etling v. Westport Heating & Cooling Servs., Inc., 92 S.W.3d 771, 774 (Mo. banc 2003), strict scrutiny would have applied under the Missouri constitution had a challenge been made. By declaring the right to bear arms “unalienable” and imposing strict scrutiny, [the amendment] could be understood to be nothing more than a declaration of the law as it would have been declared by this Court after McDonald mandated that the fundamental right to bear arms applied to the states....
Id. at 197 n. 5. This conclusion was necessary to this Court’s analysis and resolution in Dotson and was, therefore, a holding of the Court. If the constitutional amendment had changed the level of scrutiny under article I, section 23 to strict scrutiny, the Court might have considered the ballot summary at issue in Dotson unfair or insufficient. But this Court held that strict scrutiny would have applied under the prior version of article I, section 23 in the time frame after McDonald was decided, irrespective of the amendment.[4]
*897 McCoy was charged with and convicted of unlawfully possessing a firearm after McDonald was decided. Therefore, as this Court necessarily held in Dotson, strict scrutiny applies.
III. Section 571.070.1(1) Survives Strict Scrutiny
“[T]here is no settled analysis as to how strict scrutiny applies to laws affecting the fundamental right to bear arms, which has historically been interpreted to have accepted limitations.” Id. at 197. Additionally, the application of strict scrutiny depends on context, including the controlling facts, the reasons advanced by the government, relevant differences, and the fundamental right involved. See Grutter v. Bollinger, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 246, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995); Adam Winkler, Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts, 59 Vand. L. Rev. 793, 795-96 (2006).
Accordingly, “that strict scrutiny applies ‘says nothing about the ultimate validity of any particular law; that determination is the job of the court applying’ the standard.” Dotson, 464 S.W.3d at 197 (quoting Adarand, 515 U.S. at 230, 115 S.Ct. 2097). “Courts routinely uphold laws when applying strict scrutiny, and they do so in every major area of the law.” Wink-ler, supra, at 795-96. A study of all published federal court applications of strict scrutiny over a span of 13 years found that laws survived strict scrutiny 30% of the time. Id. Moreover, the same study found courts upheld laws more often in religious liberty cases than in cases involving suspect class discrimination, free speech, freedom of association, and other fundamental rights. Id. at 796-97.
It is clear that laws regulating the right to bear arms are not “presumptively invalid.” Dotson, 464 S.W.3d at 198. In Dotson, this Court recognized that the Supreme Court’s decisions in Heller and McDonald did not cast doubt on “ ‘longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.’ ” Id. at 209 at 198.
“[S]trict scrutiny is generally satisfied only if the law at issue is ‘narrowly tailored to achieve a compelling interest.’ ” Id. at 197. Section 571.070.1(1) is narrowly tailored to achieve a compelling governmental interest. The State has a compelling interest in ensuring public safety and reducing firearm-related crime. See In re Care & Treatment of Norton, 123 S.W.3d 170, 174 (Mo. banc 2003) (“The State has a compelling interest in protecting the public from crime.”). Prohibiting felons from possessing firearms is narrowly tailored to that interest because “[i]t is well-established that felons are more likely to commit violent crimes than are other law abiding citizens.” United States v. Barton, 633 F.3d 168, 175 (3d Cir. 2011). Furthermore, “someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use.”[5] *898 United States v. Yancey, 621 F.3d 681, 685 (7th Cir. 2010).
As this Court noted in Dotson, decisions of the Supreme Court of Louisiana are persuasive on this issue. 464 S.W.3d at 198. Like Missouri, the people of the State of Louisiana amended their state constitution to clarify that strict scrutiny applies to laws restricting the right to bear arms. Id. The Supreme Court of Louisiana has recently upheld, under strict scrutiny, a law banning persons who have committed certain dangerous and potentially dangerous felonies from possessing firearms or carrying concealed weapons for ten years. State v. Eberhardt, 145 So.3d 377, 385 (La. 2014). That court found “ ‘a long history, a substantial consensus, and simple common sense’ to be sufficient evidence for even a strict scrutiny review.” Id.
The Supreme Court of Louisiana also has upheld other types of restrictions under strict scrutiny. These include laws prohibiting the carrying of concealed weapons without a permit and prohibiting minors from possessing handguns in certain circumstances, State in the Interest of J.M., 144 So.3d 853, 863, 866 (La. 2014), a law banning the possession of a firearm while engaged in drug use and distribution, State v. Webb, 144 So.3d 971, 979, 983 (La. 2014), and a felon-in-possession law as applied to offenders remaining under the supervision of the Louisiana department of corrections, State v. Draughter, 130 So.3d 855, 868 (La. 2013). Cf, e.g., United States v. Marzzarella, 614 F.3d 85,101 (3d Cir. 2010) (holding that a federal law banning possession of a firearm with- an altered serial number “would pass muster under either intermediate scrutiny or strict scrutiny”); United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004) (holding, before Heller was decided, that the federal law banning felons from possessing firearms was “a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms protected under the Second Amendment”); United States v. Chavan, 735 F.3d Í127, 1139-41 (9th Cir. 2013) (upholding, under intermediate scrutiny, a federal law prohibiting gun possession by those who have been convicted of misdemeanor domestic violence offenses because the law was “substantially related to the important government interest of preventing domestic gun violence”); State v. Smith, 132 N.H. 756, 571 A.2d 279 (1990) (holding that New Hampshire’s felon-in-possession law, which applied to drug felonies, felonies against persons, and felonies against property, “narrowly serve[d] a significant governmental interest in protecting the general public” even though “[conceivably some felons falling within the reach of [the statute] are not potentially dangerous”).
McCoy’s arguments are similar to those raised in the companion case decided today. Merritt, No. SC94096. McCoy claims § 571.070.1(1) is not narrowly tailored to achieve the State’s interest, but is overbroad, because it could have applied only to violent felonies, dangerous felonies, or some other subset of felonies; that it *899 could have applied only to those on probation or parole; or just for a period of years; or not in the person’s home; or until the person qualifies for some form of reinstatement. He also claims that the felon-in-possession statute could have set out “procedural safeguards” or provided for judicial review to determine a person’s actual danger to the public before banning firearm possession, like the law permitting civil commitment of sexually violent predators, which this Court has upheld under strict scrutiny review. See Norton, 123 5.W.3d at Í75. And he claims that § 571.070.1(1) is underinclusive because it does not apply to misdemeanors, in that misdemeanants are also likely to commit firearm-related offenses.
But narrow tailoring “does not require exhaustion of every conceivable ... alternative.” Grutter v. Bollinger, 539 U.S. 306, 339, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). Unlike the law permitting civil commitment .of sexually violent predators at issue in Norton, the law at issue here is a criminal law, subject to all of the procedural safeguards afforded in criminal prosecutions by the federal and Missouri constitutions. And the fact that § 571.070.1(1) does not apply to any misdemeanors shows that the legislature decided to tailor the law so that it would apply only to those who have committed more serious offenses; it is not underinclusive.
Nor is § 571.070.1(1) overbroad. It contrasts with the federal felon-in-possession law, which applies more broadly to misdemeanor domestic violence offenses. See 18 U.S.C. § 922(g)(9) (2006). It does not apply to felony convictions that have been pardoned or expunged (although expungement would not be available for McCoy’s prior convictions[6]). It does not apply to possession of antique firearms. See § 571.070.3. And it does not prevent self-defense — just possessing firearms.
Many of the restrictions McCoy argues the General Assembly should have included in § 571.070.1(1) appear in other statutes and previous versions of the same law. The felon-in-possession law, which bans felons from possessing firearms, with no exceptions other than possessing an antique firearm, is sufficiently narrowly tailored to achieve the compelling interest of protecting the public from firearm-related crime. Therefore, it passes strict scrutiny.
Conclusion
The judgment is affirmed.
Breckenridge, C.J., Fischer, Wilson and Russell, JJ., concur;
Draper, J., concurs in result in separate opinion filed;
Teitelman, J., concurs in opinion of Draper, J.;
. Stith, J., concurs in result and concurs in opinion of Draper, J.

. Statutory citations are to RSMo Supp. 2013 except where otherwise-indicated.

. McCoy did not argue that the law violated the Second Amendment to the United States Constitution in the circuit court. He has abandoned the retrospectivity claim on appeal.

. McCoy also argues that § 571.070.1(1) is facially unconstitutional under article I, section 23. This claim fails because the over-breadth doctrine, which provides a basis for declaring a statute unconstitutional on its face, does not extend beyond the First Amendment to the United States Constitution. State v. Richard, 298 S.W.3d 529, 531 (Mo. banc 2009).
McCoy's brief to this Court also claims the statute violates the Second Amendment. McCoy did not present this claim to the circuit court; therefore, the claim of error is not preserved for appellate review. See State v. Celia, 32 S.W.3d 114, 117 (Mo. banc 2000).

. This Court is not deciding that strict scrutiny would apply to Second Amendment challenges. The concurring opinion claims Dotson's holding was wrong because the Supreme Court of the United States declined to adopt strict scrutiny as the Second *897 Amendment standard in Heller and McDonald. The Second Amendment was not at issue in Dotson, and it is not at issue in this case. Strict scrutiny applies as a matter of state law, not because of a determination that the Second Amendment requires strict scrutiny.

. The state cites statistics from a study conducted by the FBI showing an increase in *898 violent crime in Missouri between 2011 and 2012. The State claims the rise in violent crime is why its interest is particularly compelling. These statistics do not bear on the constitutional analysis because they prove nothing about the law’s design. Moreover, an FBI study for the year 2013, however, shows a decrease in violent crime to below the 2011 level. This is merely one example of why the ever-changing body of science and statistics is ill-suited to constitutional analysis. Crime in the United States by State, 2013: Table 5, FBI.gov (last visited August 12, 2015), available at https://www.fbi.gov/about-us/cjis/ucr/ crime-in-the-u.s/2013/crime-in-the-u.s.-2013/ tables/5tabledatadecpdf/tableL.5_crime_in_ the_united_states_by_state_2013.xls (on file with this Court).

. Expungement is available for felonies but only specific types, including the offenses of passing a bad check, fraudulently stopping payment of an instrument, and fraudulently using a credit device or debit device. Section 610.140.