

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )
                          )
      Appellant,       )
                          )
vs.                    )       No. SC94954
                          )
PIERRE CLAY,          )
                          )
      Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
#### Honorable Robert H. Dierker, Judge

*Opinion issued February 9, 2016*

The State appeals the trial court's holding that the right to bear arms set out in article I, section 23 of the Missouri Constitution is violated by section 571.070.1,[1] which prohibits nonviolent felons from possessing firearms. The trial court based its ruling on the adoption of Amendment 5 in August 2014, which added language to article I, section 23 requiring, *inter alia,* strict scrutiny of laws restricting the right to bear arms as set out in section 23 and further declaring that "nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the right of convicted violent felons [to bear arms] …." The trial court erred in construing this language to bar the legislature from adopting laws regulating the possession of arms by

---

[1]  Statutory citations are to RSMo Supp. 2013 except where otherwise indicated.

nonviolent felons.

The legislature has the authority to adopt laws, except when expressly prohibited by the constitution, and section 23 is silent as to the right of nonviolent felons to possess firearms. The explicit statement in section 23 that laws regulating the right to bear arms are subject to strict scrutiny has no impact on this ruling because, as this Court recently noted in *State v. Merritt, 467 S.W.3d 808 (Mo. banc 2015)*; *State v. McCoy, 468 S.W.3d 892 (Mo. banc 2015);* and *Dotson v. Kander*, *464 S.W.3d 190 (Mo. banc 2015)*, it always has applied strict scrutiny to laws regulating the right to bear arms. The circuit court's judgment is reversed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

Pierre Clay was stopped on January 26, 2015, for a traffic violation and found to possess a revolver. Police ran his record and arrested him after discovering he had a prior felony conviction. On February 25, 2015, Mr. Clay was charged by information with possession of marijuana in violation of section 195.202 and with unlawful possession of a firearm in violation of section 571.070.1(1). Section 571.070.1 prohibits persons previously convicted of a felony from possessing firearms, stating:

> A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and … [s]uch person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

*§ 571.070.1(1).*

Mr. Clay does not deny that he comes within the scope of section 571.070.1 because he is a prior offender, having been convicted previously of the nonviolent felony

of unlawful use of a weapon. But he moved to dismiss the unlawful possession charge, claiming that article I, section 23 of the Missouri Constitution prohibits the legislature from criminalizing his possession of a firearm. The trial court agreed and dismissed the firearms possession count prior to issuance of this Court's opinions in *Merritt, 467 S.W.3d 808,* and *McCoy, 468 S.W.3d 892.* The State appeals. Because this appeal involves the validity of a state statute, this Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

## II. STANDARD OF REVIEW

Rule 24.04(b)(1) permits a criminal defendant to raise "[a]ny defense or objection which is capable of determination without trial of the general issue … before trial by motion." "Whether a statute is constitutional is reviewed *de novo.* Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *State v. Vaughn, 366 S.W.3d 513, 517 (Mo. banc 2012)* (internal citations omitted).

## III. ARTICLE I, SECTION 23, AS AMENDED, DOES NOT BAR REGULATION OF FIREARMS BY NONVIOLENT FELONS

Mr. Clay claims that article I, section 23, as amended in August 2014, bars the legislature from regulating the possession of firearms by nonviolent felons. This Court disagrees. The people of Missouri adopted Amendment 5 on August 5, 2014. Prior to that amendment, article I, section 23 of the Missouri Constitution stated:

> That the right of every citizen to keep and bear arms, in defense of his home, person, and property, or when lawfully summoned in aid of the civil power, shall not be questioned; but this shall not justify the wearing of concealed weapons.

3

*Id.* Following the adoption of Amendment 5, article I, section 23 states:

> That the right of every citizen to keep and bear arms **ammunition, and accessories typical to the normal function of such arms**, in defense of his home, person, **family** and property, or when lawfully summoned in aid of the civil power, shall not be questioned~~; but this shall not justify the wearing of concealed weapons~~. **The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity.**

*Art. I, sec. 23* (new language in bold italics, deleted language struck through).

### A. The Pre-Amendment 5 Version of Article I, Section 23 Permitted Regulation of Firearms' Possession by Felons

This Court recently interpreted article I, section 23 in two cases: *Merritt, 467 S.W.3d 808,* and *McCoy, 468 S.W.3d 892*. The defendants in both of those cases argued, as Mr. Clay argues here, that in authorizing the legislature to regulate the possession of firearms by *violent* felons, Amendment 5 must be read to prohibit the legislature from regulating the possession of firearms by *nonviolent* felons. This Court did not reach that issue in *Merritt* or *McCoy* because the crimes with which the defendants in those cases were charged occurred before the adoption of Amendment 5. This Court rejected those defendants' argument that Amendment 5 applied retroactively and held that, to the contrary, the legislature's authority to regulate firearms must be determined under the version of article I, section 23 that was in effect at the time of their crimes. *Merritt, 467*

4

*S.W.3d at 810, 812; McCoy, 467 S.W.3d at 893-95.*[2]

In both *Merritt* and *McCoy*, this Court further held that because cases such as *District of Columbia v. Heller, 554 U.S. 570 (2008),* and *McDonald v. City of Chicago, Illinois, 561 U.S. 742, 791 (2010),* have recognized that the right to bear arms is a fundamental right, strict scrutiny must be used in analyzing the constitutionality of any regulation of that right. *Merritt, 467 S.W.3d at 812-13; McCoy, 468 S.W.3d at 895-96.*[3] These cases also recognize that strict scrutiny is not a monolithic concept. Rather, "the application of strict scrutiny depends on context, including the controlling facts, the reasons advanced by the government, relevant differences, and the fundamental right involved." *Merritt, 467 S.W.3d at 813; McCoy 468 S.W.3d at 897.* Or, as Justice O'Connor noted in *Grutter v. Bollinger*, *539 U.S. 306, 327 (2003)*, "Context matters … strict scrutiny is designed to provide a framework for carefully examining the importance and the sincerity of the reasons advanced by the governmental decision maker ...."

While most commonly courts apply strict scrutiny by determining whether a law was narrowly tailored to achieve a compelling state interest, in other cases, depending on the extent the regulation burdens a particular right, the courts look to whether a regulation

---

[2] "The settled rule of construction in this state, applicable alike to the Constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only.*" Merritt, 467 S.W.3d at 812* (internal citations omitted). As Amendment 5 does not spell out a clear and explicit intent to apply retroactively, the amendment applies prospectively only. *Merritt, 467 S.W.3d at 812; McCoy, 468 S.W.3d at 895*.

[3] By contrast, the United States Supreme Court in *Heller* and *McDonald* recognized that the right to bear arms is fundamental, but declined to identify the appropriate level of scrutiny of laws regulating the right to bear arms. **S***ee, e.g., Heller, 554 U.S. 570; McDonald, 561 U.S. 742*.

imposes "reasonable, non-discriminatory restrictions" that serve "the State's important regulatory interests" or whether the encroachment is "significant." [4] Similarly, *Heller* looked at the nature of the regulation and the degree of infringement it imposed on the second amendment. *554 U.S. at 628-29.* *Heller* found the absolute handgun ban in the case before it was a "severe restriction" that would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights[.]" *Id.*

Most important here, while *Heller* declined to expressly determine which scrutiny level and test applied, it stated that whatever the level, its ruling "did not cast doubt on such longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller, 554 U.S. at 626-27*; *accord, McDonald, 561 U.S. at 786.*

---

[4] *See, e.g., Johnson v. California, 543 U.S. 499, 505 (2005)* (racial classifications must be "narrowly tailored measures that further compelling government interests"); *Dun v. Blumstein, 405 U.S. 330, 342, 353 (1972)* (durational residence laws must be "necessary to promote a compelling governmental interest"); and *Kramer v. Union Free Sch. Dist. No. 15, 395 U.S. 621, 627 (1969)* ("[I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest."). Compare these statements of the test with *Burdick v. Takushi, 504 U.S. 428, 434 (1992)*, which held that "reasonable, nondiscriminatory restrictions" on the rights of voters are justified if "the State's important regulatory interests are generally sufficient to justify the restriction." (internal quotation omitted). *See also Griswold v. Connecticut, 381 U.S. 479, 504 (1965)* (White, J concurring) ("Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling. But, such statutes, if reasonably necessary for the effectuation of a legitimate and substantial state interest, and not arbitrary or capricious in application, are not invalid under the Due Process Clause.") (internal citations omitted). *See also Grutter, 539 U.S. at 326-27*, and *Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 237 (1995)* (strict scrutiny is not "strict in theory, but fatal in fact."); Adam Winkler, *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 VAND. L. REV. 793, 808 (2006).

While, unlike *Heller* and *McDonald, Merritt* and *McCoy* explicitly did apply strict scrutiny, they similarly held that it was unnecessary for them to determine which strict scrutiny test applies to the right to bear arms because section 571.070.1's restriction on the possession of weapons by felons survives even the most stringent formulation of the strict scrutiny standard in that it is narrowly tailored to achieve a compelling state interest. *Merritt, 467 S.W.3d at 814; McCoy, 468 S.W.3d at 897.* The State has a compelling governmental interest in "ensuring public safety and reducing firearm-related crime … [and] [p]rohibiting felons from possessing firearms is narrowly tailored to that interest because '[i]t is well-established that felons are more likely to commit violent crimes than are other law abiding citizens.'" *Merritt, Id. at 814*, *citing United States v. Barton, 633 F.3d 168, 175 (3d. Cir. 2011).* Further, this Court already has held that restrictions on the right of felons to possess arms has long been recognized as an exception to the right to bear arms, and section 571.070.1 is narrowly tailored in that it does not apply to misdemeanors, felony convictions that have been pardoned, or possession of antique firearms. *Id. at 815-16.*[5]

### B. Amendment 5 did not Substantially Change the Right to Bear Arms

Mr. Clay argues that the analysis in *Merritt* and *McCoy* does not apply here

---

[5] This Court rejects any suggestion that for the law to survive strict scrutiny this Court must in each case de novo reconsider and itself evaluate the strength of studies about the use of weapons by felons before it can determine whether restrictions on the right of felons to bear arms are sufficiently narrowly tailored. This Court very recently held that the law in question is narrowly tailored and is consistent with this country's tradition of limiting weapons in the hand of felons. No new evidence or changed law has been identified that calls for reevaluation of that determination.

because the adoption of Amendment 5 worked a substantial change in article I, section 23 and that section now bars any regulation of the right of nonviolent felons to possess firearms. This Court already rejected this argument in *Dotson*, *464 S.W.3d 190*. The plaintiffs in *Dotson* argued that the ballot title for Amendment 5 was legally insufficient because it omitted any description of the language being added to the constitution concerning strict scrutiny, possession of ammunition and equipment, and other language and because it did not inform the voter that the amendment substantially changed the laws regulating the right to bear arms.[6] *Dotson, 464 S.W.3d at 196-97*.

*Dotson* rejected this argument precisely because it found that Amendment 5 *did not substantially change article I, section 23* but rather simply set out "a declaration of the law as it would have been declared by this Court after *McDonald* mandated that the fundamental right to bear arms applied to the states." *Id. at 192–93, 197, n. 5*. While the ballot title did not detail all of the additions to and deletions from article I, section 23, this Court found these details were not central features of the constitutional amendment and the language in Amendment 5 did not mislead voters into thinking they were adding a new right to the Constitution. The amendment, rather, was an expression or declaration of existing rights; it simply enshrined the status quo as to the right to bear arms. [7]

---

[6] The ballot title asked voters, "[S]hall the Missouri Constitution be amended to include a declaration that the right to keep and bear arms is a [sic] unalienable right and that the state government is obligated to uphold that right?" *Dotson, 464 S.W.3d at 196*.

[7] For instance, *Dotson* held, over vigorous separate opinions addressing these very issues – *see 464 S.W.3d at 215–21* (Teitelman, J., dissenting); *id. at 205–10* (Stith, J., concurring) – that the deletion of language regarding concealed weapons did not change the legislature's authority to regulate concealed weapons that existed prior to the

Mr. Clay asks this Court to overrule *Dotson* and decide that Amendment 5 did work a substantial change in article I, section 23. At argument, Mr. Clay and *Amicus* Freedom Center of Missouri argued that the addition of language explicitly giving the legislature the authority to regulate the possession of arms by violent felons and by those with a mental disorder or infirmity meant that it could not regulate the possession of arms by other felons.

Article I, section 23 does not support this argument. It would have been simple for the people to include language in Amendment 5 prohibiting the legislature from regulating possession of firearms by nonviolent felons. The amendment could, for instance, have said, "The legislature is prohibited from regulating the possession of firearms by nonviolent felons" or "The legislature may regulate the possession of firearms by violent felons and those adjudicated to have certain mental disorders but may not regulate the possession of firearms by others." But, it did not. The amendment did not address nonviolent felons specifically in article I, section 23.

---

amendment and that the addition of the right to ammunition and accessories was not so material that its omission from the ballot title made it unfair or insufficient. *Id. at 196–99*. This Court further stated:

> [T]he fact that this right [to bear arms] is "fundamental" from a legal perspective does not mean that it is improper for the voters to add a declaration that the right is "unalienable." Similarly, the fact that the state always has had the obligation to uphold and protect this right together with the rest of the constitution does not mean it is improper for the voters to add a declaration that this is so.

*Dotson, 464 S.W.3d. at 200*.

9

The only specific groups of citizens addressed by Amendment 5 are those who are "convicted violent felons or those adjudicated by a court to be a danger to self or others as a result of a mental disorder or mental infirmity." Amendment 5 makes explicit that the clarification of the application of strict scrutiny and the other changes adopted cannot be construed to prohibit regulation of arms by such persons. The amendment simply is silent as to others. This does not mean that regulation of the possession of arms by others is not permitted. Were that the case, the amendment would have been very short indeed and would not have needed to address the level of scrutiny to be applied to regulations of the right to bear arms, for there could be no such regulation. Instead, Amendment 5 sets out the standard of scrutiny for regulation of arms possessed by persons other than convicted violent felons and persons with certain mental disorders or infirmities – such regulations may be adopted but will be subject to strict scrutiny.

This analysis follows not only from the language used in article I, section 23 as amended by Amendment 5 but also from general principles of constitutional construction.

> [T]he Constitution is not a grant but a restriction upon the powers of the legislature. Consequently, the General Assembly has the power to do whatever is necessary to perform its functions *except as expressly restrained by the Constitution*. Deference due the General Assembly requires that doubt be resolved against nullifying its action if it is possible to do so by any reasonable construction of that action or by any reasonable construction of the Constitution.

*Liberty Oil Co. v. Dir. of Revenue, 813 S.W.2d 296, 297 (Mo. banc 1991)* (internal citations omitted) (emphasis added).

This Court reached a similar result in analyzing the previous version of article I, section 23 in *Brooks v. State, 128 S.W.3d 844, 847–48 (Mo. banc 2004)*. At issue in

10

*Brooks* was whether an act adopted by the legislature authorizing the wearing of concealed weapons violated the portion of the previous version of article I, section 23, which stated that Missourians have the right to bear arms but "this shall not justify the wearing of concealed weapons." This Court held that this section did not contain a "constitutional prohibition against the wearing of concealed weapons; there is only a prohibition against invoking the right to keep and bear arms to justify the wearing of concealed weapons." *Brooks, 128 S.W.3d at 847.* In other words, article I, section 23 did not itself authorize a person to carry a concealed weapon, but that did not prohibit the legislature from authorizing the public to do so. This meant that "the General Assembly, which has the plenary power to enact legislation on any subject in the absence of a constitutional prohibition, has the final say in the use and regulation of concealed weapons[.]" *Id.* (internal citations omitted).

Similarly, here, Amendment 5 did not bar the General Assembly from adopting laws regulating possession of firearms by nonviolent felons. It does state that such laws are subject to strict scrutiny. "That strict scrutiny applies 'says nothing about the ultimate validity of any particular law; that determination is the job of the court applying' the standard." *Dotson, 464 S.W.3d at 197, citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, (1995).*

This Court already has subjected section 571.070.1 to strict scrutiny in *Merritt* and *McCoy* and found that section 571.070.1 is narrowly tailored to serve a compelling government interest in protection of the public. This Court already has determined in *Dotson* that Amendment 5 worked no substantial change in article I, section 23. This

11

Court here has clarified that the specific grant of authority in Amendment 5 to adopt laws regulating the possession of firearms by convicted violent felons does not affect the right of the legislature to adopt laws regulating the right of others to possess firearms where, as here, those laws pass strict scrutiny. [8]  Accordingly, section 571.070.1 is a constitutional restriction of a convicted nonviolent felon's right to bear arms.

## IV.    CONCLUSION

Missouri's constitution does not prohibit the legislature from restricting nonviolent felons' right to possess firearms.  Section 571.070.1 survived strict scrutiny review under the prior version of article I, section 23, and this Court already has held that Amendment 5 did not substantially change article I, section 23.  The statutory bar is valid. The circuit court's judgment is reversed, and the case is remanded.

_____

**LAURA DENVIR STITH, JUDGE**

Breckenridge, C.J., Fischer, Wilson and Russell,
JJ., concur; Teitelman, J., dissents in separate
opinion filed; Draper, J., concurs in opinion of
Teiteman, J.

---

[8] Mr. Clay argues that article I, section 23 now requires a "robust" strict scrutiny review of any restriction on the right to bear arms because the word "unalienable" was added to the constitution.  But the concept of inalienability is distinct from strict scrutiny review. No one suggests that the right to bear arms is alienable.  The question here is whether preventing nonviolent felons from possessing firearms violates the inalienable right. Mr. Clay cites no case requiring a more robust review of the right to bear arms because it is inalienable, and in any event, there is no more robust test than strict scrutiny.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,       )
                             )
      Appellant,           )
                             )
vs.                          )      No. SC94954
                             )
PIERRE CLAY,          )
                             )
      Respondent.       )

**Dissenting Opinion**

The principal opinion holds that the section 571.070.1, RSMo Supp. 2013, ban on the possession of firearms by convicted felons is constitutional as applied to nonviolent felons because the restriction is narrowly tailored to serve the compelling state interest in public safety. The State certainly has a compelling interest in public safety. I respectfully dissent, however, because the State fails to establish that essentially abrogating the fundamental constitutional right to keep and bear arms for convicted nonviolent felons is narrowly tailored to serve the interest in public safety. The practical effect of section 571.070.1 is that individuals with no demonstrated propensity toward violence are forever stripped of their fundamental constitutional right to keep and bear

arms "in defense of [their] home, person, family and property, or when lawfully summoned in aid of the civil power ...." Irrespective of one's view of article I, section 23, the fact remains that it establishes a fundamental right that the people of Missouri have retained for themselves and that is subject to restriction only on the narrowest grounds. The categorical and permanent restrictions that section 571.070.1 places on the exercise of this fundamental right are too broad to survive strict scrutiny.

As the principal opinion notes, this Court recognized that under the former version of article I, section 23, the right to bear arms was considered a fundamental right and that restrictions on that right were subject to strict scrutiny. *State v. Merritt*, 467 S.W.3d 808, 812-13 (Mo. banc 2015); *State v. McCoy*, 468 S.W.3d 892, 895-96 (Mo. banc 2015). *McCoy* and *Merritt* both held that the section 571.070.1 ban on the possession of firearms by felons was constitutional because it was narrowly tailored to accomplish the compelling state interest in ensuring public safety and reducing gun crime. Because *Merritt* and *McCoy* applied strict scrutiny and article I, section 23 now expressly requires strict scrutiny, the principal opinion concludes that *Merritt* and *McCoy* are dispositive of this case. The logic of this position is flawless, but the conclusion is faulty. The problem is that the State never demonstrated that categorically and permanently restricting the fundamental constitutional right of nonviolent felons is narrowly tailored to meet a compelling state interest in public safety. There are at least three deficiencies in the argument that permanently abrogating the constitutional rights of nonviolent felons to keep and bear arms in defense of themselves and their families is narrowly tailored to achieve the State's compelling interest in public safety.

2

## I. The studies and data offered by the State are insufficient

To survive strict scrutiny, the statutory ban on the possession of firearms by convicted nonviolent felons must be narrowly tailored to serve the compelling state interest in public safety. To determine whether section 571.070.1 is narrowly tailored to prevent gun crimes, this Court must "look at what kinds of [gun crimes] have been shown to exist and what kinds of [gun crimes] the [firearms possession ban] will ameliorate." *Weinschenk v. State*, 203 S.W.3d 201, 217 n. 27 (Mo. banc 2006) (holding that provision requiring photo identification to vote was not narrowly tailored to serve the compelling state interest in preventing voter fraud). The studies and data offered by the State do not demonstrate that permanently banning convicted nonviolent felons from possessing a firearm will ameliorate any gun crimes whatsoever.

The State has provided very limited data indicating that convicted felons tend to commit more crimes than the general population. None of the studies, data or articles cited by the State differentiate between the rate and types of gun crimes committed by those with no prior convictions relative to individuals with prior nonviolent or violent convictions. The State does not show that any of the studies or articles separately analyzed obvious variables such as the number and nature of the prior offenses, the number and nature of subsequent offenses, the age of the offenders, or the lapse of time between offenses. The lack of analysis of different variables renders it impossible to determine the relative propensity of convicted nonviolent felons to commit gun crimes. Without this information, it is impossible to determine whether restricting the rights of

nonviolent felons is actually narrowly tailored to achieve the goal of public safety.[1]  The

lack of even rudimentary scientific rigor leaves the State to rely on what amounts to

assumptions, conjecture, and "common sense" unmoored by relevant, established facts.[2]

The State's justifications would survive rational basis review, but the State's

justifications rely on instruments too blunt to carve out a narrowly tailored restriction on

the exercise of a fundamental constitutional right.

## II. The ever-expanding scope of nonviolent felonies

The principal opinion asserts that "context matters" when courts apply strict

scrutiny.  If context matters, then this Court should consider the fact that the list of

nonviolent and impersonal regulatory offenses is a long one and it grows every year.[3]

---

[1] It is instructive to compare the sparse justifications offered by the State in this case with the extensive and detailed record in cases where the government justified a policy that was subject to strict scrutiny.  For instance, in *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003), the Supreme Court held that an affirmative action policy in law school admissions was narrowly tailored to serve a compelling state interest in obtaining educational benefits from a racially diverse student body.  The record in *Grutter* included academic studies and extensive expert testimony on both sides of the issue.  This is not to say that strict scrutiny is satisfied only when the State relies on scientific studies and extensive expert testimony.  But when, as in this case, the asserted State interest is preventing a specific social problem, strict scrutiny requires the State to demonstrate that its chosen method of restricting fundamental constitutional rights is in fact narrowly tailored to achieve that purpose.  At the very least, the State should be able to direct courts to facts that are relevant and reliable.

[2] For instance, the State cites a "study" that purports to show a "20% to 30%" reduction in risk for unspecified later "criminal activity" due to the denial of "handgun purchases to convicted felons."  There is no indication of what "criminal activity" was reduced and, obviously, the study looked at the denial of handgun purchases rather than a permanent and categorical ban on firearms possession by nonviolent felons.  The authors of this study actually concede that the sample size was too small to determine "some potentially important differences in risk for later criminal activity" or whether the differences noted "occurred by chance."

[3] There are dozens upon dozens of these types of nonviolent felony offenses.  For instance, section 260.208 provides that an applicant for a permit to operate a solid waste processing facility commits a class D felony by failing to notify the director of the department of natural

4

While it is beyond dispute that murderers, rapists and others who commit violent or dangerous felonies have amply demonstrated the inability to abide by the responsibilities entailed by the right the right to bear arms, that conclusion becomes considerably less certain and, in some cases, counterintuitive when one considers the broad and ever-expanding array of nonviolent felonies. Yet section 571.070.1 strips the delinquent taxpayer of his or her constitutional rights on the same terms as a murderer. I fail to see how restricting the constitutional rights of those who bet on horse races or divulge the names and addresses of donors to a state-established trust fund is narrowly tailored to the prevention of gun violence.

### III. Improper Applications of Case Law

In *Merritt* and *McCoy,* this Court relied on *State v. Eberhardt*, 145 So. 3d 377 (La. 2014), to support the conclusion that section 571.070.1 survives strict scrutiny. In this case, the State once again cites *Eberhardt* to support its argument that restricting the constitutional rights of nonviolent felons is narrowly tailored to serve the interest in public safety. The statute at issue in *Eberhardt*, which imposed a 10-year ban on firearms possession by individuals who committed specifically enumerated dangerous and potentially dangerous felonies was permissible even under strict scrutiny. The *Eberhardt* court reasoned that history, consensus, and "simple common sense" were

---

resources that he or she has previously been convicted of an offense involving price-fixing or some other offense related to the restraint of trade. Section 143.1003 provides that one commits a class C felony by disclosing the name or address of contributors to the Missouri National Guard Trust Fund. Section 285.306 provides that an employee who fails to fill out a federal tax withholding form commits a class D felony. Section 313.660 makes it a class C felony to bet on a horse race while outside the enclosure of a licensed horse racing track.

sufficient to demonstrate that the targeted firearms restriction survived strict scrutiny review. *Id.* at 385.

The problem is that the statute at issue in *Eberhardt* is radically different from section 571.070.1. First, unlike the categorical ban in section 571.070.1, the statute at issue in *Eberhardt* was narrowly tailored in that it banned the possession of firearms by dangerous felons. Given that the asserted State interest is protecting the public from gun crime, it follows that a narrowly tailored restriction on constitutional gun rights will focus on those with a demonstrated propensity to engage in violent or dangerous offenses, which pose a risk to public safety. While delinquent taxpayers may disregard the law, one cannot plausibly assert that their conduct is evidence of a propensity to engage in conduct that poses a risk to public safety.

Second, unlike the permanent ban imposed by section 571.070.1, the Louisiana statute was further limited because it imposed a 10-year ban following completion of the sentence. In contrast, the ban imposed by section 571.070.1 is permanent. Accordingly, the young woman whose youthful impetuousness led her to place an illegal bet on a horse race will be, as a mature and law-abiding citizen, forever barred from possessing a firearm for purposes of defending herself and her family. The statute at issue in *Eberhardt* was narrowly tailored because it contained additional, targeted criteria for assessing an individual's propensity to engage in violent or dangerous behavior. The Louisiana statute is narrowly tailored because, unlike section 571.070.1, it separates the murderers and rapists from the delinquent taxpayers and off-track bettors.

6

I would hold that section 571.070.1, as applied to convicted nonviolent felons, violates article I, section 23 of the Missouri Constitution.

_____

Richard B. Teitelman, Judge