Richard B. Teitelman, Judge
The principal opinion holds that the section 571.070.1, RSMo Supp. 2013, ban on the possession of firearms by convicted felons is constitutional as applied to nonviolent felons because the restriction is narrowly tailored to serve the compelling state interest in public safety. The State certainly has a compelling interest in public safety. I respectfully dissent, however, *539 because the State fails to establish that essentially abrogating the fundamental constitutional right to keep and bear arms for convicted nonviolent felons is narrowly tailored to serve the interest in public safety. The practical effect of section 571.070.1 is that individuals with no demonstrated propensity toward violence are forever stripped of their fundamental constitutional right to keep and bear arms “in defense of [their] home, person, family and property, or when lawfully summoned in aid of the civil power ..Irrespective of one’s view of article I, section 23, the fact remains that it establishes a fundamental right that the people of Missouri have retained for themselves and that is subject to restriction only on the narrowest grounds. The categorical and permanent restrictions that section 571,070.1 places on the exercise of this fundamental right are too broad to survive strict scrutiny.
As the principal opinion notes, this Court recognized that under "the former version of article I, section 23, the right to bear arms was considered a fundamental right and that restrictions on that right were subject to strict scrutiny. State v. Merritt, 467 S.W.3d 808, 812-13 (Mo. banc 2015); State v. McCoy, 468 S.W.3d 892, 895-96 (Mo. banc 2015). McCoy and Merritt both held that the section 571.070.1 ban on the possession of firearms by felons was constitutional because it was narrowly tailored to accomplish the compelling state interest in ensuring public safety and reducing gun crime. Because Merritt and McCoy applied strict scrutiny and article I, section 23 now expressly requires strict scrutiny, the principal opinion concludes that Merritt and McCoy are dispositive of this case. The logic of this position is flawless, but the' conclusion is faulty. The problem is that the State never demonstrated that categorically and permanently restricting the fundamental constitutional right of nonviolent felons is narrowly tailored to meet a compelling state interest in public safety. There are at least-three deficiencies in the-argument that permanently abrogating the constitutional rights of nonviolent felons to keep and bear arms in defense of themselves and their families is narrowly tailored to achieve the State’s compelling interest-in public safety.
I. The studies and data offered by the State are insufficient
To survive strict scrutiny, the statutory ban on the possession of firearms by convicted nonviolent felons must be narrowly tailored to serve the compelling state interest in public safety. . To determine whether section 571.070.1 is narrowly .tailored to prevent gun crimes, this Court must “look at what kinds of [gun crimes] have been shown to exist and what kinds of [gun crimes] the [firearms possession ban] will ameliorate.” Weinschenk v. State, 203 S.W.3d 201, 217 n. 27 (Mo. banc 2006) (holding .that provision requiring photo identification- to vote was not narrowly tailored to serve the compelling state interest in preventing voter fraud). The studies and data offered by the State do not demonstrate that permanently banning convicted nonviolent felons from possessing a firearm will ameliorate any gun crimes, whatsoever..
The State has provided very limited data indicating that convicted felons tend to commit more crimes than the general population. None of the studies, data or articles cited by the State differentiate between the rate and types of gun- crimes committed by those with no prior convictions relative to' individuals with prior nonviolent, or violent convictions. The, State does not show that any of the studies or *540 articles separately analyzed obvious variables such as the number and nature of the prior offenses, the number and nature of subsequent offenses, the age of the offenders, or the lapse of time between offenses. The lack of analysis of different variables renders it impossible to determine the rel-' ative. propensity of convicted nonviolent felons to commit gun crimes.' Without this information,.’ it is'impossible to determine whether restricting the rights of nonviolent felons is actually narrowly tailored to achieve the goal of public safety.[1] The lack of even rudimentary scientific rigor leaves the State to rely on what amounts to assumptions, conjecture, and “common sense” unmoored by relevant, established facts.[2] The' State’s justifications would survive • rational basis review, but the State’s justifications rely on -instruments too blunt to carve out a narrowly tailored ‘restriction on the exercise-of a fundamental constitutional right. ■
II. The ever-expanding scope of nonviolent felonies
The principal opinion asserts that “context ■ matters” when- courts apply strict scrutiny.. If context matters,, then this Court should consider the fact that the list .of.nonviolent and impersonal regulatory offenses is a long one and it.grows every year.[3] ■ While it is beyond dispute that murderers, .rapists and others who commit violent or dangerous felonies have amply demonstrated the inability to abide by the responsibilities entailed, by the right the right to bear arms, that conclusion becomes considerably, less certain and, in *541 some cases, counterintuitive when one considers the broad and ever-expanding array of nonviolent felonies. Yet section 571.070.1 strips the delinquent taxpayer of his or her constitutional rights on the sanje terms as a murderer. I fail to see how restricting the ■ constitutional rights of those who bet on horse races or divulge the names and addresses of donors to a state-established, trust fund- is narrowly tailored to the prevention of gun violence.
III. Improper Applications of Case Law
In Merritt and McCoy, this Court relied on State v. Eberhardt, 145 So.3d 377 (La.2014), to support the conclusion that section 571.070.1 survives strict scrutiny. In this case, the State once again cites Eberhardt to support its argument that restricting the constitutional rights of nonviolent felons is narrowly tailored to serve the' interest in public safety. The statute at issue in Eber-hardt, which imposed a 10-year ban on firearms possession by individuals who committed specifically enumerated dangerous and potentially dangerous felonies was permissible even under strict scrutiny. The Eberhardt court reasoned that history, consensus, ■ and “simple common sense” were sufficient to demonstrate that the targeted firearms restriction survived strict scrutiny review. Id. at 385.
The problem is that the statute at issue in Eberhardt -is radically different .from section 571.070.1. First, unlike the categorical ban in section 571.070.1, the statute at issue in Eberhardt was narrowly tailored in that it banned the possession of ■firearms by dangerous felons. Given that the asserted State interest' is protecting the public from gun crime, it follows that a narrowly tailored restriction on constitutional gun rights will focus on those with a demonstrated propensity to engage in violent or dangerous offenses, which pose a risk to public safety. While delinquent taxpayers may disregard the law, one cannot plausibly assert that their conduct is evidence of a propensity to engage in conduct that poses a risk to public safety.
Second, unlike the permanent ban imposed by section 571.070.1, the Louisiana statute was further limited because it imposed a 10-year ban following completion of the sentence. In contrast, the ban imposed by section 571.070.1 is permanent. Accordingly, the young woman whose youthful impetuousness led her to place an illegal bet on a horse race will be, as a mature and. law-abiding citizen, forever barred from possessing a firearm for purposes of defending herself and her family. The statute at issue in Eberhardt was narrowly tailored because it contained additional, targeted criteria for assessing an individual’s propensity to engage in violent or dangerous behavior. The Louisiana statute is narrowly tailored because, unlike' section 571.070.1, it separates the murderers and rapists from the delinquent taxpayers and off-track bettors.
I would hold' that section 571.070.1, as applied to convicted nonviolent felons, violates-article T, section 23 of'the Missouri Constitutiort. '

. . It is instructive to compare the sparse justifications offered by the State in this case with the extensive and detailed record in cases where the government justified a policy that was-subject to strict scrutiny, For instance, in Grutter v. Bollinger, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003), the Supreme Court held that an áffirmative action policy in law school admissions was narrowly tailored to serve a compelling state, interest in obtaining educational benefits from a racially diverse student body. The record in Grutter included' academic studies and extensive ex- ' pert testimony ■ on both sides of -the issue. .This is not to say that strict scrutiny-is satisfied only when the State relies.on scientific studies and extensive expert testimony. But when, as in this case, the asserted State interest is preventing a specific social problem, strict scrutiny requires the State to demonstrate that its chosen method of restricting , fundamental constitutional rights is in fact narrowly tailored to achieve that purpose. At the very least, the State should be able to direct courts to facts that are relevánt'and reliable. ' ■ ’ '■

. For instance, the State cites a "study” that purports to show a “20% to 30%” reduction in risk" for unspecified later "criminal activity” dtle to the denial of "handgun purchases to convicted felons.” There is no indication of what "criminal activity” was reduced and, obviously, the study looked, at the denial of handgun purchases rather than a permanent and categorical ban on firearms possession by nonviolent felons, The authors of this study actually concede that the sample size was too small to determine "some potentially important differences in risk for later criminal activity” or whether the differences noted "occurred'by chance.”

.There are dozens upon dozens of .these types of nonviolent felony offenses. For instance, ' section 260.208 provides that an applicant for a p'ermit to operate a solid waste processing facility commits a class D felony by failing to notify the director of the department of natural resources that he or she has previously been convicted of an offense involving price-fixing or some other offense • related to the restraint-of trade. Section 143.1003 provides that one commits a class C felony by disclosing the name or address of contributors to the Missouri National Guard Trust Fund. Section 285.306 provides that an employee who fails to fill out a federal-tax withholding form commits a class-D felony. Section 313.660 makes it a class C felony to bet on k horse race while outside the enclosure of a licensed horse racing track.-• ■ " •